No. 05-617

IN THE SUPREME COURT OF THE STATE OF MONTANA

2006 MT 279

_____

JASON LEE LOTT,                                    )
                                                   )
                  Petitioner,                      )
                                                   )          O P I N I O N
        v.                                         )              and
                                                   )          O R D E R
STATE OF MONTANA,                                  )
                                                   )
                  Respondent.                      )

_____

¶1     On June 2, 1992, the Montana Eighteenth Judicial District Court, Gallatin County,

sentenced Jason Lee Lott to fifty years in Montana State Prison on four separate counts:

Count I, ten years for aggravated kidnapping, with a ten-year sentence enhancement for

use of a dangerous weapon, a hunting knife, to run consecutively with the aggravated

kidnapping sentence, for a total of twenty years; Count II, twenty years for sexual

intercourse without consent, with a ten-year sentence enhancement for use of a dangerous

weapon, a hunting knife, to run consecutively with the sexual intercourse without consent

sentence, for a total of thirty years; Count III, ten years for *aggravated burglary*, with a

*ten-year sentencing enhancement for use of a dangerous weapon*, a hunting knife, to run

consecutively for a total of twenty years; and Count IV, ten years for *felony assault*, with

a *ten-year enhancement for use of a dangerous weapon*, a hunting knife, to run

consecutively with the felony assault sentence, for a total of twenty years.  The court

ordered Counts I and II to run concurrently and Counts III and IV to run concurrently.

1

¶2     In the time since the court sentenced Lott, we ruled in *State v. Guillaume*, 1999 MT 29, ¶ 16, 293 Mont. 224, ¶ 16, 975 P.2d 312, ¶ 16, that application of the weapons enhancement to a felony offense that itself requires proving the use of a weapon violates Montana's constitutional protection against double jeopardy. We reasoned that Article II, Section 25 of the Montana Constitution offers protection against "multiple prosecutions for offenses arising out of the same transaction, and multiple punishments imposed at a single prosecution . . . ." *Guillaume*, ¶ 8. A few years later, in *State v. Whitehorn*, 2002 MT 54, ¶ 45, 309 Mont. 63, ¶ 45, 50 P.3d 121, ¶ 45, we held that *Guillaume* applies retroactively and clarified that felony assault with a weapon and aggravated burglary (since the offenses themselves require use of a weapon) are the only offenses that may not be enhanced under § 46-18-221, MCA. *Whitehorn*, ¶ 45.

¶3     Pursuant to *Guillaume* and *Whitehorn*, Lott now argues that the District Court unconstitutionally enhanced his sentence in violation of the prohibition against double jeopardy.[1] In response, the State contends that Lott is prohibited from making such an argument at this juncture. Characterizing Lott's petition as a writ of habeas corpus, the State asserts that under § 46-22-101(2), MCA, the writ of habeas corpus "is not available to attack the validity of the conviction or sentence of a person who has been adjudged guilty of an offense in a court of record and has exhausted the remedy of appeal." The State further notes that although Lott could have raised any constitutional arguments on

---

[1]Although Lott asserts three separate grounds for relief [(1) his sentence violates his right against double jeopardy; (2) he did not receive a jury trial pursuant to the Sixth Amendment; and (3) he did not knowingly plead guilty to the sentence enhancement provisions in violation of the Fourteenth Amendment], for purposes of this Opinion, we need only address the double jeopardy argument.

direct appeal or in a petition for postconviction relief, he did not, and he is time-barred from relief under the postconviction statute, § 46-21-102, MCA, which during the time period relevant to Lott's 1992 conviction required a petitioner to file within five years of sentencing.[2]

¶4 In light of *Guilluame* and *Whitehorn*, it is apparent that the District Court unconstitutionally enhanced Lott's sentence with regard to the aggravated burglary and felony assault convictions. However, under the current statutory scheme, relief is unavailable to Lott, as he is time-barred from filing either a direct appeal or a petition for postconviction relief, and the habeas corpus statute prohibits Lott, who pled guilty and failed to appeal (thereby *exhausting* his remedy of appeal), from challenging his sentence. *See* § 46-21-102, MCA, and § 46-22-101(2), MCA. Given Montana's constitutional right to habeas corpus provided for in Article II, Section 19, the issue we address today is whether the procedural bar established in the current habeas corpus statutory scheme is unconstitutional as applied to a facially invalid sentence. We hold that, as applied to Lott, it is.

**The Writ of Habeas Corpus: A Brief Overview**

¶5 In 1807, Chief Justice Marshall referred to the writ of habeas corpus as a "great constitutional privilege." *Ex Parte Bollman and Ex Parte Swartwout*, 4 Cranch 75, 95, 2

---

[2]The present one-year filing requirement for postconviction relief went into effect on April 24, 1997, and applies to all persons convicted on or after April 24, 1996. *State v. Wright*, 2001 MT 247, ¶ 9, 307 Mont. 100, ¶ 9, 38 P.3d 772, ¶ 9. Individuals convicted prior to that date are subject to the previous five-year filing deadline. *Hawkins v. Mahoney*, 1999 MT 82, ¶ 9, 294 Mont. 124, ¶ 9, 979 P.2d 697, ¶ 9. Since Lott was convicted in 1992, the five-year time period applies.

3

L.Ed 554, 561 (1807). Literally meaning "you have the body," habeas corpus ensures the integrity of the legal process resulting in imprisonment. Originating in the English common law, habeas corpus is a form of collateral attack that functions as an independent proceeding "to determine whether a defendant is being unlawfully deprived of his or her liberty." *Black's Law Dictionary* 709 (6th ed., West 1990). "Its root principle is that in a civilized society, government must always be accountable to the judiciary for a man's imprisonment: if the imprisonment cannot be shown to conform with the fundamental requirements of law, the individual is entitled to immediate release." *Fay v. Noia*, 372 U.S. 391, 402, 83 S. Ct. 822, 829 (1963) (overturned in part on other grounds).

¶6 The so-called "Great Writ of Liberty" existed long before the founders of this nation provided for its protection in Article I, Section 9, Clause 2, of the United States Constitution. "[A] writ antecedent to statute [with] roots deep into the genius of our common law," *Fay*, 372 U.S. at 400, 83 S. Ct. at 828, English judges and legal authorities described habeas corpus as "the birthright of the people," and "one of the most important safeguards of the liberty of the subject." Donald E. Wilkes, Jr., *Federal and State Postconviction Remedies and Relief* 41 (Harrison 1992). The first known habeas corpus proceeding in the American colonies took place in Virginia in 1682. By the time the founding fathers ensured for its protection in the federal constitution, habeas corpus had already become an established right in the United States. Wilkes, hereinafter *Postconviction Remedies* at 76, 78.

¶7 "Although in form the Great Writ is simply a mode of procedure, its history is inextricably intertwined with the growth of fundamental rights of personal liberty." *Fay*,

4

372 U.S. at 401, 83 S. Ct. at 828-29. The original common-law interpretation of habeas corpus only applied relief to defendants challenging the trial court's jurisdiction. With time, however, habeas corpus became a collateral remedy for constitutional error. Ira P. Robbins, *Habeas Corpus Checklists* 141 (Thomson/West 2006). At the federal level, habeas corpus relief was codified by Congress in Chapter 153 of Title 28 of the United States Code, specifically 28 U.S.C. §§ 2241 through 2255. Wilkes, *Postconviction Remedies* at 196. In addressing Congress's authority to define and condition the writ, the United States Supreme Court has recognized that "the power to award the writ by any of the courts of the United States, must be given by written law," and also that "judgments about the proper scope of the writ are 'normally for Congress to make.'" *Felker v. Turpin*, 518 U.S. 651, 664, 116 S. Ct. 2333, 2340 (1996) (citing *Ex parte Bollman*, 4 Cranch 75, 94 (1807) and *Lonchar v. Thomas*, 517 U.S. 314, 323, 116 S. Ct. 1293, 1298 (1996)). The Supreme Court concluded that, in regards to statutory restrictions placed on second habeas petitions, such Congressional restrictions "do not amount to a 'suspension' of the writ contrary to Article I, § 9" of the United States Constitution. *Felker*, 518 U.S. at 664, 116 S. Ct. at 2340. In contrast to the United States Supreme Court's deference to Congress's judgment about the proper scope of the federal writ, we conclude that Montana's guarantee of the privilege of habeas corpus embodies a fundamental, intrinsic principle: the right to challenge the cause of one's imprisonment. In Montana, therefore, there are inherent limits on the Legislature's ability to define or restrict the scope of the writ because the fundamental principle of the writ cannot be "suspended" under Article II, Section 19 of the Montana Constitution.

5

¶8 Until the mid-1930s, postconviction habeas corpus relief for state prisoners in state court was narrowly available and generally not applied to defendants imprisoned pursuant to a criminal conviction unless the conviction or sentence was void for lack of jurisdiction. Wilkes, *Postconviction Relief* at 107. State courts, however, often recognized as a ground for habeas corpus relief a claim that the statute or ordinance defining the offense for which the defendant had been convicted was unconstitutional, or that the sentence was in excess of the statutory maximum, or otherwise unauthorized. Wilkes, *Postconviction Remedies* at 107. After 1935, the states began the process of expanding and modernizing their postconviction remedies and by 1970, nearly three-quarters of the states had in some form or another expanded the availability of postconviction relief by a process of liberal interpretation of the writ of habeas corpus and/or the writ of error coram nobis. Wilkes, *Postconviction Remedies* at 112-13. Today, all states have a modern postconviction remedy authorized by case law, statutory enactment, or promulgation of a rule of court. Wilkes, *Postconviction Remedies* at 546.

**Habeas Corpus and Postconviction Relief in Montana**

¶9 In Montana, the writ of habeas corpus was first provided for in Article III, Section 21, of the 1889 Constitution. A few decades later, in 1927, this Court explained,

> The purpose of a writ of habeas corpus is to determine the legality or illegality of the restraint alleged to be exercised. It is available only to those persons, or on behalf of those persons, unlawfully imprisoned or restrained of their liberty, and is independent of the legal proceeding under which the detention is sought to be justified.

*August v. Burns*, 79 Mont. 198, 213, 255 P. 737, 741 (1927) (citations omitted).

6

¶10 Initially, habeas corpus relief in Montana not only provided for cases where individuals were jailed without charge, but also served as the principal postconviction remedy, used to attack convictions and sentences where judgment of the convicting court was void for lack of jurisdiction. The writ was also available to raise certain claims unrelated to the validity of the conviction or sentence. Donald E. Wilkes, Jr., *State Postconviction Remedies and Relief* vol. 2, 311 (Harrison 2001).

¶11 In 1967, the legislature enacted the Montana Post-Conviction Hearing Act (MPCHA) to explain the parameters of habeas corpus petitions, which included postconviction claims. The MPCHA, an amalgam of the 1955 Uniform Post-Conviction Procedure Act (UPCPA) and the Illinois Post-Conviction Hearing Act, was designed to combat shortcomings in postconviction procedures. Generally, until MPCHA's enactment, both pre-charge *and postconviction* claims alleging an illegal constraint were referred to as petitions for "writs of habeas corpus."[3] The MPCHA essentially divided pre-charge claims from postconviction claims by creating two separate chapters: "Post-Conviction Hearing" and "Habeas Corpus." The legislation established jurisdiction in the district courts, provided filing requirements and procedures for hearing postconviction petitions, and limited successive petitions. Jeffrey T. Renz, *Post-Conviction Relief*, 55 Mont.L.Rev. 331, 334-36 (1994). In accordance with this statutory mandate, since 1967,

---

[3]*See Bubnash v. State*, 139 Mont. 639, 366 P.2d 867 (1961) (this Court addressed a petition for habeas corpus alleging that the trial court denied effective assistance of counsel and abused its discretion in refusing to fix bail); *In re Alden's Petition*, 143 Mont. 457, 391 P.2d 701 (1964) (petition of habeas corpus alleging due process and equal protection violations); *In re Davis' Petition*, 141 Mont. 565, 380 P.2d 880 (1963) (petition for habeas corpus alleging ten postconviction issues).

this Court has generally characterized most postconviction motions as petitions for "post-conviction relief," rather than "writs of habeas corpus." Renz, 55 Mont.L.Rev. at 336.

¶12 In 1972, with ratification of Article II, Section 19, of the new constitution, Montana again provided for constitutional protection of the right to habeas corpus, providing that "[t]he privilege of the writ of habeas corpus shall never be suspended." Over the years, since the enactment of the MPCHA and the 1972 Constitution, the legislature has amended the habeas corpus and postconviction statutes in an effort to limit access to the postconviction remedy. The original 1967 MPCHA habeas corpus chapter stated:

> 95-2701. **Who may prosecute writ.** Every person imprisoned or otherwise restrained of his liberty, within this state, may prosecute a writ of habeas corpus to inquire into the cause of such imprisonment or restraint, and if illegal to be delivered therefrom.

¶13 The postconviction chapter, on the other hand, provided parameters for when a petitioner could challenge *an imposed sentence*, specifying that such relief is interrelated to habeas corpus:

> 95-2601. **Petition in the trial court**. Any person adjudged guilty of an offense in a court of record who has no adequate remedy of appeal and who claims sentence was imposed in violation of the constitution or the laws of this state or the Constitution of the United States, or that the court was without jurisdiction to impose such sentence, or that sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, *upon any ground of alleged error available under writ of habeas corpus*, writ of coram nobis, or other common law or statutory remedy may move the court which imposed the sentence or the supreme court or any justice of the supreme court to vacate, set aside, or correct the sentence. [Emphasis added.]

8

¶14    In 1981, the legislature implemented its first amendments to the habeas corpus chapter, specifying that any claims challenging the validity of a sentence should be filed pursuant to the postconviction statutes:

> 46-22-101.  **Who may prosecute writ.**  *(1) Except as provided in subsection (2),* every person imprisoned or otherwise restrained of his liberty, within this state may prosecute a writ of habeas corpus to inquire into the cause of such imprisonment or restraint, and if illegal, to be delivered therefrom.
>
> *(2) Relief under this chapter is not available to attack the validity of the conviction of a person who has been adjudged guilty of an offense in a court of record and has exhausted his remedy of appeal.  Relief for such purposes is limited to the provisions of Title 46, chapter 21* [defining postconviction hearings].  [Emphasis added.]

¶15    Only four years later, in 1985, the legislature again amended the statute to provide in subsection (2):

> Relief under this chapter is not available to attack the validity of the conviction *or sentence* of a person who has been adjudged guilty of an offense in a court of record and has exhausted his remedy of appeal; *nor is relief under this chapter available to attack the legality of an order revoking a suspended or deferred sentence*.  Relief for such purposes is limited to the provisions of Title 46, chapter 21.  [Emphasis added.]

¶16    When the legislature initially adopted the MPCHA, the specific postconviction relief was available "at any time after conviction."  Section 95-2604, RCM (1967).  In 1991, the lawmakers imposed a time period, limiting postconviction filings to "any time within 5 years of the date of conviction."  Section 46-21-102, MCA (1991).  Six years later, the statute was again amended, this time imposing a *one-year* time limitation, unless the claim alleges the discovery of new evidence.  Section 46-21-102(2), MCA (1997).  The one-year time limitation for postconviction relief remains the law today.

9

¶17 Thus, over the years, the writ of habeas corpus has become largely supplanted by postconviction statutes which, in turn, have become increasingly restrictive. Today, an individual incarcerated pursuant to an illegal sentence has one year from the date that his or her conviction becomes final to file for postconviction relief. Section 46-21-102, MCA. If an unconstitutionally incarcerated individual misses the time for appeal and the one-year deadline, he or she is barred from legal recourse.

**Lott's Petition**

¶18 Turning to the case at hand, Lott contends that pursuant to *Guillaume* and *Whitehorn*, the District Court unconstitutionally enhanced his sentence in violation of the prohibition against double jeopardy. In response, the State asserts that habeas corpus relief is inappropriate because Lott was adjudged guilty and could have raised these constitutional issues on direct appeal or in a petition for postconviction relief; that, having failed to raise the issue on appeal, he is now procedurally barred from raising it by way of habeas corpus, § 46-22-101(2), MCA, and is time-barred from filing a petition for postconviction relief. *See* § 46-21-102(1), MCA.

¶19 As mentioned at the outset, we recognize that the current habeas corpus statute bars an individual such as Lott, who has been adjudged guilty of an offense and has failed to appeal or has exhausted his remedy of appeal, to attack the validity of his sentence. We also agree with the State that the direct appeal and postconviction remedies are no longer available to Lott because the statutory time periods have passed. It is imperative to note, however, that had Lott filed a timely direct appeal or petition for postconviction relief, his double jeopardy argument would have been unavailing since the decisions on

10

which he relies (*Guillaume* and *Whitehorn*) were not issued until well after both filing dates had expired.

¶20    The procedural bar blocking Lott from seeking habeas corpus relief on his double jeopardy claim is troubling to this Court given that Lott's sentence was clearly enhanced beyond constitutional limitations.  The central function of the courts is the pursuit of justice.  Like all human endeavors, this pursuit is occasionally flawed. The writ of habeas corpus is designed to correct such flaws and to remedy "extreme malfunctions in the state criminal justice systems."  *Jackson v. Virginia*, 443 U.S. 307, 332 n.5, 99 S. Ct. 2781, 2796 n.5 (1979) (Stevens, J., concurring).  Habeas corpus affords relief to those in society who have been "grievously wronged."  *Brecht v. Abrahamson*, 507 U.S. 619, 637, 113 S. Ct. 1710, 1721 (1993).  "From the time of the Magna Charta, the Great Writ of Habeas Corpus has been liberally employed as a means of guaranteeing that [justice] be accomplished and that a miscarriage of justice will be remedied.  For at its heart, the writ represents an acknowledgment of the principle that the rights of freedom of the individual are worthy of protection."  *State v. Perry*, 232 Mont. 455, 462-63, 758 P.2d 268, 273 (1988) (citations omitted), *overruled on other grounds State v. Clark*, 2005 MT 330, ¶ 32, 330 Mont. 8, ¶ 32, 125 P.3d 1099, ¶ 32.

¶21    The Montana Constitution provides in Article II, Section 19, that "[t]he privilege of the writ of habeas corpus shall never be suspended."  We can only assume that when the delegates to the 1972 Constitutional Convention enacted this provision, they intended to enshrine habeas corpus as recognized and applied in Montana as of 1972.  As noted above, in the decades leading up to the 1972 Constitution, the writ of habeas corpus had

11

been applied to both pre-charge and postconviction claims. While the MPCHA statutorily defined postconviction relief in a chapter separate from habeas corpus, enactment of the 1967 legislation was designed to provide more postconviction relief than habeas corpus, not less. In the years since MPCHA's enactment, however, the legislature has slowly but progressively narrowed the scope and availability of postconviction relief.

¶22 In light of the writ's history and purpose, as well as Montana's constitutional guarantee in Article II, Section 19, that the writ of habeas corpus *shall never be suspended*, we conclude that, as applied to a facially invalid sentence—a sentence which, as a matter of law, the court had no authority to impose—the procedural bar created by § 46-22-101(2), MCA, unconstitutionally suspends the writ. We hold that incarceration of an individual pursuant to a facially invalid sentence represents a "grievous wrong," *Brecht*, 507 U.S. at 637,113 S. Ct. at 1721, and a "miscarriage of justice," *Perry*, 232 Mont. at 462, 758 P.2d at 273, warranting habeas corpus relief. When the delegates ratified the 1972 Constitution, they intended, at a minimum, that an individual incarcerated pursuant to a facially invalid sentence—for example, a sentence which either exceeds the statutory maximum for the crime charged or which violates the constitutional right to be free from double jeopardy—have the ability to challenge its legality.

¶23 The petition for writ of habeas corpus is hereby granted. Since Lott has challenged his sentence and not the underlying conviction, he "is not entitled to be released but only to be resentenced." *Petition of Gray*, 184 Mont. 363, 365, 603 P.2d 230, 231 (1979). Resentencing is also consistent with our holding in *Guillaume*, ¶ 25, the

12

decision upon which Lott relies. This matter is remanded to the District Court for resentencing on Counts 3 and 4.

DATED this 27th day of October, 2006.

/S/ W. WILLIAM LEAPHART

We concur:

/S/ KARLA M. GRAY
/S/ JOHN WARNER
/S/ BRIAN MORRIS
/S/ PATRICIA COTTER
/S/ JAMES C. NELSON
/S/ JIM RICE