JUSTICE WHEAT,
dissenting.
¶53 I agree with much of the plurality opinion, and I specifically join Section I of that opinion. In this case, however, I would depart from the nonretroactivity rule of Teague v. Lane, 489 U.S. 288, 109 S. Ct. 1060 (1989), as applied by this Court in the line of cases beginning with State v. Egelhoff, 272 Mont. 114, 900 P.2d 260 (1995).[1] The rationale of those cases does not justify nonretroactivity in this case, and I would retroactively give Beach the benefit of the U.S. Supreme Court’s decision in Miller v. Alabama, U.S._, 132 S. Ct. 2455 (2012). In light of that decision, I would find Beach’s sentence to be *95 unconstitutional and grant his petition for a writ of habeas corpus. For these reasons, I concur in Section 1 and dissent from the rest of the plurality’s opinion and its order.
I. Retroactivity
¶54 I agree with the plurality that the retroactivity rule of Teague would preclude Beach from receiving the benefit of the procedural rule announced in Miller. We are not, however, limited by the retroactivity rule of Teague in state collateral review proceedings, and we are free to provide broader retroactive application of new rules than advocated by the Teague plurality. Opinion, ¶ 23 n.6; see also Danforth v. Minnesota, 552 U.S. 264, 275, 277, 128 S. Ct. 1029, 1038-39 (2008) (“Neither Linkletter nor Teague explicitly or implicitly constrained the authority of the States to provide remedies for a broader range of constitutional violations than are redressable on federal habeas.... A close reading of the Teague opinion makes clear that the rule it established was tailored to the unique context of federal habeas and therefore had no bearing on whether States could provide broader relief in their own postconviction proceedings than required by that opinion.”). Although we have applied the nonretroactivity rule of Teague to state collateral review proceedings since first considering it in Egelhoff, I would depart from that rule here. Considering the rationale and the interests upon which the nonretroactivity rule of Teague is based,[2] the interests at stake in the rule announced in Miller, and the value this Court and the people of Montana place on those interests, I would retroactively give Beach the benefit of the rule announced in Miller.
1. The rationale for the nonretroactivity rule o/Teague
¶55 A plurality of the Supreme Court adopted a new rule governing retroactivity in Teague.[3] 489 U.S. at 305, 310, 109 S. Ct. at 1072-73, 1075. The general rule of nonretroactivity it adopted was an exercise of the U.S. Supreme Court’s power to interpret the federal habeas corpus statute. Danforth, 552 U.S. at 278, 128 S. Ct. at 1039-40. The purposes for the federal writ of habeas corpus provided the “relevant *96 frame of reference,” and the resulting nonretroactivity rule was “tailored to the unique context of federal habeas.” Danforth, 552 U.S. at 277, 279, 128 S. Ct. at 1039-40; Teague, 489 U.S. at 306, 109 S. Ct. at 1073.
¶56 The plurality recognized two primary purposes for the writ. The first purpose, deterrence, provided the foundation for the general nonretroactivity rule. The plurality stated that “the threat of habeas serves as a necessary ... incentive for trial and appellate courts throughout the land to conduct their proceedings in a manner consistent with established constitutional standards.” Teague, 489 U.S. at 306, 109 S. Ct. at 1073. In order to perform this deterrence purpose, the plurality reasoned, rules need not be applied retroactively. Instead, “the habeas court need only apply the constitutional standards that prevailed at the time the original proceedings took place.” Teague, 489 U.S. at 306, 109 S. Ct. at 1073.
¶57 Having decided that nonretroactivity was consistent with purposes of habeas corpus, the plurality considered the interests of comity and finality to better define the scope of review. It decided that nonretroactivity of new rules is preferred. Teague, 489 U.S. at 307-08, 109 S. Ct. at 1073-75. The interest offinalityis the interest in reducing a controversy to a final judgment not subject to further judicial revision. Teague, 489 U.S. at 306, 109 S. Ct. at 1073. This interest, of course, weighed in favor of nonretroactivity. The plurality considered the interest to be important, because “[wjithout finality,” it said, “the criminal law is deprived of much of its deterrent effect.” Teague, 489 U.S. at 309, 109 S. Ct. at 1074. The interest of comity also weighed in favor of nonretroactivity. The plurality reasoned that “the application of new rules to cases on collateral review ... continually forces the States to marshal resources in order to keep in prison defendants whose trials and appeals conformed to then-existing constitutional standards.” Teague, 489 U.S. at 310, 109 S. Ct. at 1075. It decided that the “costs imposed upon the State[s] by retroactive application of new rules of constitutional law on habeas corpus... generally far outweigh the benefits of this application.” Teague, 489 U.S. at 310, 109 S. Ct. at 1075 (quoting Solem v. Stumes, 465 U.S. 638, 654, 104 S. Ct. 1338, 1347 (1984) (Powell, J., concurring)) (modifications in original). Based on the deterrence purpose of habeas corpus and the scope of review dictated by comity and finality, the plurality concluded that a general rule of nonretroactivity was appropriate for federal habeas corpus review. Teague, 489 U.S. at 310, 109 S. Ct. at 1075.
¶58 The limited exceptions the plurality recognized to this rule were based on a second purpose for federal habeas corpus, namely “to assure *97 that no man has been incarcerated under a procedure which creates an impermissibly large risk that the innocent will be convicted.” Teague, 489 U.S. at 312, 109 S. Ct. at 1076. This was a relatively slight consideration for the plurality, however, as “[t]he Court has never defined the scope of the writ simply by reference to a perceived need to assure that an individual accused of crime is afforded a trial free of constitutional error.” Teague, 489 U.S. at 308, 109 S. Ct. at 1074. The plurality, therefore, drew the exceptions to the nonretroactivity rule narrowly, concluding that only where the fundamental fairness of a proceeding was implicated or where “bedrock procedural elements ... vitiate the fairness of a particular conviction,” would there be an impermissibly large risk of unfairness requiringretroactive application of a new rule. Teague, 489 U.S. at 311, 109 S. Ct. at 1076 (emphasis in original). Such cases, the plurality declared, would be few and far between. See Teague, 489 U.S. at 311, 109 S. Ct. at 1076.
¶59 In crafting its rule, the plurality ultimately concluded that while fairness weighed in favor of retroactive application of new rules, it was a relatively slight consideration and was generally outweighed in the context of federal habeas review by considerations of finality, comity, and the writ’s deterrence purpose. Teague, 489 U.S. at 306, 309-10, 109 S. Ct. at 1073-75.
2. The rationale of Teague does not justify nonretroactivity in this case
¶60 Balancing these same interests in the context of this case and the Montana writ of habeas corpus, I would depart from the rule of Teague. Nonretroactive application of Miller will lead to unfair results, and unlike in Teague, the relevant countervailing interests are not sufficient to justify such results in this case. More specifically, our writ serves a different purpose than the federal writ, and, in this context and considering the rule we are asked to apply, fairness outweighs considerations of comity and finality. Therefore, the rationale of the Teague plurality does not justify application of its nonretroactivity rule in this case, and we should give Beach the benefit of Miller.

a. The purposes for our writ of habeas corpus

¶61 We have recognized that “Montana’s guarantee of the privilege of habeas corpus embodies a fundamental, intrinsic principle: the right to challenge the cause of one’s imprisonment.” Lott v. State, 2006 MT 279, ¶ 7, 334 Mont. 270, 150 P.3d 337. Rather than a mere deterrent, the writ is the “birthright of the people” and “one of the most important safeguards of the liberty of the subject.” Lott, ¶ 6. Indeed, our Constitution guards the writ more completely than the Federal Constitution. Compare Mont. Const, art. II, § 19 with U.S. Const, art. *98 I, § 9. Rather than primarily a deterrent to the courts, the writ in Montana is a tool for achieving justice. See Order, Paranteau v. Green 6-7, No. OP 13-0769 (Mar. 4,2014); Lott, ¶¶ 7, 9, 20. Thus, I cannot say, as the Teague plurality did, that the primary purpose of the writ can readily be served in all cases by merely “applying] the constitutional standards that prevailed at the time the original proceedings took place.” Teague, 489 U.S. at 306, 109 S. Ct. at 1073.

b. Comity does not affect this decision

¶62 Interests of comity played a central role in how the Teague plurality reached its rule. Danforth, 552 U.S. at 279-80, 128 S. Ct. at 1040-41; Teague, 489 U.S. at 308-10, 109 S. Ct. at 1074-75. Comity is generally of no concern in state collateral review proceedings. Danforth, 552 U.S. at 279-80, 128 S. Ct. at 1041. Except in limited circumstances, this is so in Montana, and this is the case today. The Court’s decision here will not disrupt the proceedings of any other sovereign, and for that reason comity does not weigh against retroactive application of Miller. If anything, comity instead weighs in favor of retroactive application. See Danforth, 552 U.S. at 279-80, 128 S. Ct. at 1041 (“[Considerations of comity militate in favor of allowing state courts to grant habeas relief to a broader class of individuals than is required by Teague.”); Kills on Top v. State, 279 Mont. 384, 420, 928 P.2d 182, 204 (1996) (“[Considerations of federalism and comity counsel respect for the ability of state courts to carry out their role as the primary protectors of the rights of criminal defendants.”).
c. Finality carries less weight here than it did in Teague
¶63 As in Teague, interests of finality do weigh against retroactive application oí Miller, but we need not give finality the same weight as the Teague plurality. The Supreme Court has stated, “finality of state convictions is a state interest, not a federal one. It is a matter that States should be free to evaluate, and weigh the importance of, when prisoners held in state custody are seeking a remedy for a violation of federal rights by their lower courts.” Danforth, 552 U.S. at 279-80, 128 S. Ct. at 1041 (emphasis in original). I would afford finality less weight than the Teague plurality in today’s decision.
¶64 While I agree with the Teague plurality that finality is important to conservation of State resources, Teague, 489 U.S. at 310, 109 S. Ct. at 1075, the plurality only considered the effect on State resources from overturning a conviction. Here, Beach does not contest his guilt nor does he ask for a new trial. Rather, he merely asks to be resentenced. While allowing such relief does impose a burden on the State, it does not impose nearly the same burden that overturning a conviction and requiring a new tidal would. For this reason, the importance of finality *99 does not weigh as heavily here as it did in Teague or as it would in many state collateral review proceedings.
¶65 I also agree with the Teague plurality that “[wlithout finality, the criminal law is deprived of much of its deterrent effect.” Teague, 489 U.S. at 309, 109 S. Ct. at 1074. However, finality is less important to preserving the deterrent effect in this case than it was in Teague. The deterrent effect of criminal law is at the heart of the rule that we are asked to apply. In Miller, Graham v. Florida, 560 U.S. 48, 130 S. Ct. 2011 (2010), and Roper v. Simmons, 543 U.S. 551, 125 S. Ct. 1183 (2005), the U.S. Supreme Court recognized that juvenile offenders are less deterred by criminal sentences than adult offenders. It is partly for this reason that it prohibited certain sentences and required individualized consideration to support others.[4] Miller, 132 S. Ct. at 2465; Graham, 560 U.S. at 72, 130 S. Ct. at 2028-29; Roper, 543 U.S. at 571-73, 125 S. Ct. at 1196-97. Here, we cannot say that retroactive application will harm the deterrent effect of the law, because we cannot say that the law was ever a deterrent to Beach or to similarly situated individuals. Miller, 132 S. Ct. at 2465, 2469. At the very least, it served as less of a deterrent than it would in most cases. Correspondingly, there is less harm from depriving the law of its deterrent effect in this case, and finality carries less weight than it did in Teague.

d. Nonretroactive application of Miller is unfair

¶66 The countervailing interest of fairness is of more importance here than it was in Teague, given the purposes for our state writ, as discussed above. This heightened interest of fairness weighs in favor of retroactivity here, because nonretroactive application of Miller creates unfair results. This is clear upon examination of the rule we are asked to apply and, based on that rule, the unfair distinctions the plurality draws in its decision.
i. The rule o/Miller
¶67 We are asked to apply the rule of Miller in this case. Miller is the latest decision in a line of cases that includes Roper and Graham, and its rule can only be fully understood in the context of those cases.[5] Miller, 132 S. Ct. at 2463-69. These cases stand for the rule that the Eighth Amendment prevents any criminal punishment that lacks a *100 legitimate penological justification, and that to determine whether there is such justification, courts must take into account the characteristics attendant to juvenility that, for example, make juvenile convicts less culpable and more reformable.
¶68 In Roper, the U.S. Supreme Court decided that the Eighth Amendment prohibits states from imposing the death penalty on juvenile offenders. 543 U.S. at 568, 125 S. Ct. at 1194. It explained that when compared to adults, juveniles are less mature, less responsible, more vulnerable to negative influences and outside pressures, and more likely to be rehabilitated. Roper, 543 U.S. at 569-70, 125 S. Ct. at 1195-96. These differences, the court decided, render juvenile offenders less culpable for their crimes than adults. Roper, 543 U.S. at 571, 125 S. Ct. at 1196. Based on this diminished culpability and lack of maturity, the court reasoned that the penological purposes for the death penalty-retribution and deterrence — apply with less force to juveniles than adults. Ultimately, it decided that “neither retribution nor deterrence provides adequate justification for imposing the death penalty on juvenile offenders,” and that the death penalty is a disproportionate punishment when applied to juveniles. Roper, 543 U.S. at 572, 125 S. Ct. at 1196. Because the Eighth Amendment requires punishments to be proportionate to the crime and culpability of an offender, the court decided that sentencing juveniles to death violates the Eighth Amendment. Roper, 543 U.S. at 568, 125 S. Ct. at 1194.
¶69 Applying much the same analysis, the U.S. Supreme Court decided in Graham that the Eighth Amendment prohibits imposing life sentences without the possibility of parole on juveniles that have not committed homicide. Graham, 560 U.S. at 74, 130 S. Ct. at 2029-30. It again analyzed the penological purposes for the sentence and decided that, given the differences in maturity and culpability of a juvenile, the penological purposes do not justify imposing such a sentence on juveniles. Graham, 560 U.S. at 67-74, 130 S. Ct. at 2026-30. In particular, it recognized that imposition of a sentence of life without parole is an implicit decision that a juvenile is incorrigible and will forever be a danger to society. Graham, 560 U.S. at 74, 130 S. Ct. at 2029-30. The penalty, it said, “forswears altogether the rehabilitative ideal,” since it “deprives the convict of the most basic liberties without giving hope of restoration.” Graham, 560 U.S. at 69-70, 74, 130 S. Ct. at 2027, 2030. This kind of irrevocable judgment that denies an offender the right to reenter society, it reasoned, is not appropriate in light of juveniles’ “capacity for change and limited moral culpability.” Graham, 560 U.S. at 74, 130 S. Ct. at 2030.
*101 ¶70 The U.S. Supreme Court again applied this general analytical framework in Miller. The decision in that case differed from Roper and Graham in that it did not categorically prohibit a type of punishment for a class of individuals. Miller, 132 S. Ct. at 2471. The court relied on those cases’ analyses, however, and decided that, based on the characteristics attendant to juvenility, a sentence of life imprisonment without parole imposed on a juvenile homicide offender will usually not have legitimate penological justifications. Miller, 132 S. Ct. at 2469. It decided, though, that it might be justified for particular juveniles, based on their particular characteristics. Miller, 132 S. Ct. at 2469. It, therefore, required sentencing courts, as a condition to the constitutionality of a life without parole sentence imposed on a juvenile homicide offender, to consider the penological justifications for the sentence in light of the offender’s juvenility and attendant capacity for rehabilitation and diminished culpability. Miller, 132 S. Ct. at 2469.
¶71 This line of cases stands for the proposition that the Eighth Amendment prevents any criminal punishment that lacks legitimate penological justification, and that to determine whether there is such justification, courts must take into account the characteristics attendant to juvenility that make juvenile offenders less culpable and more likely to be reformed. For some sentences, such as the death penalty and life sentences without parole for non-homicide offenders, there will never be legitimate penological justifications for imposing the sentence on juveniles. Graham, 560 U.S. at 74, 130 S. Ct. at 2030; Roper, 543 U.S. at 568, 125 S. Ct. at 1194. For other sentences, such as life sentences without parole for homicide offenders, there may but usually will not be legitimate penological justifications. To conform to the Eighth Amendment in such circumstances, sentencing courts must consider the characteristics of the particular juvenile offender. Miller, 132 S. Ct. at 2469.
ii. The effect of the plurality’s decision not to apply Miller retroactively
¶72 The plurality, by choosing not to apply the rule of Miller retroactively, implicitly makes several fine and unfair distinctions between similarly situated offenders, and it decides that constitutional protections can legitimately be extended or withheld upon these distinctions alone.
¶73 If a sentence identical to Beach’s was imposed today on an offender identical to Beach, the Court should have no trouble disposing of the threshold retroactivity issue and considering whether the sentence is unconstitutional. See Opinion, ¶¶ 12,48; Miller, 132 S. Ct. at 2469. Yet, according to the plurality, that same question of *102 constitutionality cannot be reached now merely because of the timing of Beach’s conviction and sentencing. This aspect of the plurality’s decision draws two distinctions.
¶74 First, the plurality decides that there is a difference between the sentences that this society can constitutionally impose and the sentences this society can constitutionally enforce. If Beach’s sentence does not comply with Miller, then this society could not impose the same sentence on him today. The plurality decides, though, that we can continue to enforce the same sentence we now recognize as unconstitutional. This is illogical, especially since a sentence to life without parole is a judgment by a court that an offender will never be fit to reenter society. Miller, 132 S. Ct. at 2469; Graham, 560 U.S. at 74, 130 S. Ct. at 2030. If we now recognize that a certain type of offender may be able to reenter our society, we should not prevent the offender from doing so based merely on the values of the past society that sentenced him or her.
¶75 The second distinction this aspect of the plurality’s decision draws is between offenders based purely upon when the offender appears in court. It decides that a mere 60 days — the time for filing an appeal to this Court, after which postconviction proceedings are the only means of relief — will mean the difference between an offender receiving constitutional protection or not. See M. R. App. P. 4(5)(b). As we have stated, “selectively applying the Constitution to people who are similarly situated based merely on the circumstances or timing of their appearance in court is the antithesis of the judiciary’s responsibility.” State v. Whitehom, 2002 MT 54, ¶ 41,309 Mont. 63, 50 P.3d 121. The rule of Miller is unquestionably of constitutional importance, and the plurality decides today to selectively apply it to otherwise similarly situated persons based solely on the timing of the offender’s appearance in court.
¶76 Another aspect of the plurality’s decision draws a third unfair distinction, distinguishing and treating disparately those sentences that are on their face penologically unjustified from those that lack penological justification based upon more individualized circumstances. While this is not a distinction the plurality explicitly makes, it is the practical effect of its opinion. As discussed above, the U.S. Supreme Court decided in Graham and Roper that death sentences and life without parole for non-homicide offenders would never have legitimate penological justifications when imposed on juveniles. Graham, 560 U.S. at 74, 130 S. Ct. at 2030; Roper, 543 U.S. at 568, 125 S. Ct. at 1194. The Court would have no trouble applying this rule retroactively, as it is a categorical prohibition. See Opinion, ¶¶ 38-39.
*103 ¶77 Ulogically, however, the plurality refuses to apply the virtually indistinguishable rule of Miller. The real distinction between Miller and Roper or Graham is that the court in Miller decided that certain sentences are usually penologically unjustified rather than categorically prohibited. Miller, 132 S. Ct. at 2469. Because the sentence was not always prohibited, the Supreme Court allowed it under Miller based on the individual circumstances of the particular offender. Miller, 132 S. Ct. at 2469. Here, if Beach’s sentence is equivalent to a sentence of fife without parole and if the proper procedures were not followed in imposing it,[6] his sentence probably lacks penological justification and is unconstitutional. We would have no way of definitively knowing whether it is justified since an individualized determination was not made. By not applying Miller retroactively, the plurality implicitly decides that we need not ensure that Beach’s sentence was proportional and constitutional merely because, regardless of Beach’s own circumstances and despite the severe risk that the sentence will be unconstitutional, the type of sentence might occasionally be constitutionally applied to juveniles. See Opinion, ¶¶ 38-39; Miller, 132 S. Ct. at 2469.
¶78 Thus, the plurality’s decision distinguishes between sentences that we can decide are unconstitutional based only on the sentence and bare demographic facts of the offender and those that we can tell are unconstitutional only after individualized consideration. This is unfair. A sentence that lacks penological justification is disproportionate and violates the Eighth Amendment regardless of the analysis required to reach that conclusion. To extend and withhold the protections of the Eighth Amendment based on how closely we must examine the circumstances is an untenable and unfair basis for Constitutional protections.

e. Finality does not justify nonretroactivity in this case

¶79 The plurality’s decision results in an unfair distinction. Given the level of importance we give fairness and remediation in Montana habeas corpus proceedings, only a strong countervailing interest could justify nonretroactive application of Miller. As discussed above, the only countervailing interest in this case is finality, and it is of slight importance here. It is not sufficient to justify nonretroactivity in spite of the resulting unfair consequences.
¶80 Unlike the U.S. Supreme Court, this Court serves as “the primary protector[] of the rights of criminal defendants.” Kills on Top, 279 *104 Mont. at 420, 928 P.2d at 204 (quoting Cabana v. Bullock, 474 U.S. 376, 391, 106 S. Ct. 689, 699 (1986)). Accordingly, when analyzing Eighth Amendment protections, we have stated that “[c]onventional notions of finality of litigation have no place where life or liberty is at stake and infringement of constitutional rights is alleged.” Kills on Top, 279 Mont. at 400, 928 P.2d at 192 (holding that res judicata does not bar reconsideration of the constitutionality of a petitioner’s death sentence during postconviction relief proceedings); see also State v. Southwick, 2007 MT 257, ¶ 16, 339 Mont. 281, 169 P.3d 698 (holding that res judicata does not prevent this Court from correcting a facially illegal sentence). While this statement taken alone may be overbroad and while the relevant cases may be distinguishable from the present situation on their facts, the general principle is meritorious; this State, its people, and this Court place more value on fairness than finality, at least in the context of the Eighth Amendment. At the veiy least, where the interests bear comparable importance in a particular matter, finality should give way to fairness. As discussed above, this principle comports with the purposes for Montana’s writ of habeas corpus.
¶81 The plurality’s decision to adhere to Teague today turns this preference on its head. Here, fairness and the remedial purpose of our writ of habeas corpus are weighty compared to the relatively less important interest of finality. For this reason, and considering how we have weighed these interests in the past, finality and nonretroactivity should give way to fairness and retroactive application of Miller.
II. Beach
¶82 The State argues that we should not grant Beach’s petition for habeas corpus, even if Miller is applied retroactively. It contends that Beach’s sentence was not unconstitutional under the rule of Miller because Miller only applies to sentences of life without parole that were mandatorily imposed by statute. The State concludes that Beach’s sentence is not unconstitutional because it was neither mandatorily imposed nor a sentence of life without parole. Additionally, it argues, the sentencing court did, in fact, consider Beach’s age when sentencing him. For this reason, it again concludes that Beach’s sentence was not unconstitutional under the rule of Miller. I disagree.
¶83 While applied in that case to a mandatory sentence of life without parole, the court in Miller was concerned with the “irrevocable judgment about [an offender’s] value and place in society” that kind of sentence makes. Miller, 132 S. Ct. at 2465 (quoting Graham, 560 U.S. at 74, 130 S. Ct. at 2030) (alteration in original). Life without parole, it said, “forswears altogether the rehabilitative ideal,” deciding that the *105 offender is “incorrigible.” Miller, 132 S. Ct. at 2465 (quoting Graham, 560 U.S. at 73-74, 130 S. Ct. at 2029-30). Because “incorrigibility is inconsistent with youth” and juveniles are thus often more reformable than adults, the court concluded that the sentence would not always be penologically justified and therefore could not be mandatorily imposed. Miller, 132 S. Ct. at 2465, 2468-69. It stated that the sentence might still be constitutionally imposed on juveniles, but only after individualized consideration of that juvenile’s characteristics. Miller, 132 S. Ct. at 2469.
¶84 Here, the court’s decision applies with the same force to Beach’s sentence. Because he was sentenced on May 11, 1984, to 100 years’ imprisonment without the possibility of parole, the earliest Beach could have been released was when he was 72 years old. This means that his sentence exceeded his life expectancy at the time of sentencing, and that it is near or in excess of his life expectancy now. See IIA National Center for Health Statistics, Vital Statistics of the United States § 6, 577 (U.S. Department of Health and Human Services 1984) (reporting the life expectancy at birth for a white male bom in 1961 as 67.55 years, and reporting the expectation of life at twenty years old for a white male bom in 1961 as 50.25 years); National Center for Health Statistics, United States Life Tables, 2010, National Vital Statistics Reports, Nov. 6,2014, at 3 (reporting that in 2010 the expectation of fife for a 40 year old white male was 38.5 years). Thus, the sentence provided Beach with no meaningful opportunity for release and no “meaningful opportunity” to demonstrate the “maturity and rehabilitation” sufficient to reenter society. Graham, 560 U.S. at 75, 130 S. Ct. at 2011. As in Miller, the sentence imposed upon Beach forswears the rehabilitative ideal based upon the implicit decision that Beach, even as a juvenile, was incorrigible. As in Miller, the sentence deprived him of the most basic liberties without giving hope of restoration. Miller, 132 S. Ct. at 2465; see Graham, 560 U.S. at 69-70, 130 S. Ct. at 2027. Thus, for the purposes of Miller, Beach’s sentence is the functional equivalent of life without parole. Cf Lockyer v. Andrade, 538 U.S. 63, 79, 123 S. Ct. 1166, 1176-77 (2003) (Souter, J., dissenting) (“because Andrade was 37 years old when sentenced, the substantial 50-year period amounts to life without parole”); Graham, 560 U.S. at 70-71, 130 S. Ct. at 2028 (citing Harmelin v. Michigan, 501 U.S. 957, 996, 111 S. Ct. 2680, 2702 (1991) (“In some cases... there will be negligible difference between life without parole and other sentences of imprisonment — for example,... a lengthy term sentence without eligibility for parole, given to a 65-year-old man.”); Sumner v. Shuman, 483 U.S. 66, 83, 107 S. Ct. 2716, *106 2726 (1987) (“[T]here is no basis for distinguishing, for the purposes of deterrence, between an inmate serving a life sentence without the possibility of parole and a person serving several sentences of a number of years, the total of which exceeds his normal life expectancy”). According to Miller, then, Beach’s sentence could only be constitutionally imposed if the sentencing court considered whether the sentence was penologically justified in light of Beach’s juvenility. Miller, 132 S. Ct. at 2469.
¶85 It is of little importance that Beach’s chronological age was on the PSI and available to the sentencing judge. In order to constitutionally impose Beach’s sentence, it would not have been enough for the sentencing judge to be aware of Beach’s chronological age. Knowing that Beach was a juvenile, the court would still need to consider Beach’s particular circumstances and characteristics and to determine whether, in light of these characteristics, his culpability and inability to be reformed warrant the severe sentence. Miller, 132 S. Ct. at 2469.
¶86 Here, there is no indication in the record or otherwise that the District Court made these considerations. It issued a sentence that effectively decided that Beach was incorrigible without considering that as a juvenile he was more likely to be reformed. It effectively sentenced him to life imprisonment without parole, and it did so without considering that as a juvenile Beach may have been more susceptible to outside pressure, less cognizant of consequences, and correspondingly less culpable and less likely to be deterred. Miller, 132 S. Ct. at 2465-69. In doing so, it made “youth (and all that accompanies it) irrelevant to imposition of that harshest prison sentence” and created “too great a risk of disproportionate punishment.” Miller, 132 S.Ct. at 2469.
¶87 For these reasons, Beach’s sentence does not comply with the rule announced in Miller. It is, therefore, unconstitutional. I would grant Beach’s petition for this reason and I would order that he be resentenced.

 The plurality implies that we cannot consider whether to depart from this retroactivity framework because Beach did not argue that we should do so. However, we have addressed arguments and even issues not raised or supported by parties where failing to do so would cause substantial injustice. State v. Andersen-Conway, 2007 MT 281, ¶ 14, 339 Mont. 439, 171 P.3d 678. Given the importance of the constitutional issues at stake and the potential for substantial injustice resulting from an incorrect decision, we are not required to resolve the issues raised by the parties based on their reasoning alone.

 This Court has never provided reasoning for adopting the retroactivity rule of Teague. See, e.g., State v. Cook, 2012 MT 34, ¶¶ 17-19, 364 Mont. 161, 272 P.3d 50; State v. Reichmand, 2010 MT 228, ¶¶ 13-15, 358 Mont. 68, 243 P.3d 423; Egelhoff, 272 Mont. at 126, 900 P.2d at 267.

 The rule was adopted by a majority of the U.S. Supreme Court in Penry v. Lynaugh, 492 U.S. 302, 313-14, 109 S. Ct. 2934, 2944 (1989).

 See Part I.2.d.i., below for a more complete discussion of these cases.

 For the sake of convenience, we have and will continue to refer to the rule we are asked to apply as the rule of Miller. The rule might more accurately, however, be referred to as the rule expressed in Miller in light of Graham and Roper.

 These questions are resolved below, in Part II.