JUSTICE LEAPHART
delivered the Opinion of the Court.
¶1 Dallas Edward Reichmand (Reichmand) was convicted after a jury trial in March 2008 of two counts of Criminal Distribution of Dangerous Drugs, a felony in violation of §45-9-101, MCA. Reichmand appeals from the conviction, from the restitution condition of his sentence, and from the District Court’s denial of his post-trial motion to set aside the verdict.
¶2 On appeal we consider whether our recent decision in State v. Goetz, 2008 MT 296, 345 Mont. 421, 191 P.3d 489, should be retroactively applied to Reichmand’s direct appeal and, if so, whether Reichmand’s conviction should be reversed.
PROCEDURAL AND FACTUAL BACKGROUND
¶3 In August 2007, officers working with the Southwest Montana Drug Task Force began investigating whether Reichmand was selling drugs from his residence in Butte, Montana. Officers recruited Terry Chor to act as an undercover agent to make drug purchases. On August 21,2007, Chor arranged to make a drug buy from Reichmand. Agents searched Chor and his vehicle, gave him money to make the buy, and equipped him with a transmitter that allowed agents off-site to hear and record Chor’s conversations. On August 24, 2007, Chor again bought ten morphine tablets for $35 each. Agents listened to and recorded Chor’s conversations during both transactions. Chor and the listening agents testified at the March 2008 trial. The recordings were played to the jury several times during the course of the trial. The *70 officers did not obtain a search warrant authorizing use of the electronic monitoring. Reichmand did not testify or present any other evidence at trial. His defense centered on his contention that he was misidentified as the person who sold drugs to Chor.
¶4 A jury found Reichmand guilty of two counts of felony Criminal Distribution of Dangerous Drugs. On September 5, 2008-after the verdict but two weeks before the scheduled sentencing hearing-Reichmand filed a motion to set aside the jury verdict based on our decision in Goetz, which was announced on August 20, 2008. The parties submitted briefs on the motion, including supplemental briefs addressing this Court’s latest decision in State v. Foster-DeBerry, 2008 MT 397, 347 Mont. 164, 197 P.3d 1004.
¶5 On December 3, 2008, the District Court denied the motion, relying on Foster-DeBerry, in which the defendant’s appeal was pending when Goetz was decided. Foster-DeBerry asked this Court to remand her case so that she could present a Goetz-based challenge to the warrantless recording of her conversations during a police investigation. We concluded that she was not entitled to the benefits of retroactive application of Goetz because her case was not "similarly situated” for purposes of a newly-announced rule. Id. at ¶ 8. Foster-DeBerry defined "similarly situated” as having raised the issue addressed by the new rule at the trial court level, thereby preserving it for appeal. Id. Utilizing this reasoning from Foster-DeBerry, the District Court concluded that Reichmand had failed to assert a Goetz-type claim prior to or during trial and was therefore precluded from arguing that he is “similarly situated” to the defendant in Goetz. Reichmand now appeals.
STANDARD OF REVIEW
¶6 Reichmand’s appeal requires us to consider the retroactivity of State v. Goetz, which is a question of law. We review questions of law de novo. In re Fair Hearing of Hanna, 2010 MT 38, ¶ 13, 355 Mont. 236, 227 P.3d 596.
DISCUSSION
¶7 I. Did the District Court err in not granting Reichmand’s motion for a new trial based on the retroactive application of the holding in State v. Goetz?

A. Appellate review.

¶8 As an initial matter, we pause to consider our ability to review this issue on appeal. Questions of retroactivity may implicate a *71 number of doctrines, such as plain error review, which allow appellate courts to consider issues that were not presented in the lower court. Given the requirement in our statues that the defendant must object to an alleged error “at trial” in order to preserve his rights to appeal, it would seem that we might need to rely on one of these doctrines to review the present case. Reichmand objected in the lower court several months after the verdict was pronounced, and the language of §46-20-701(2)(a) and §46-20-104(2), MCA, greatly restricts appellate review unless objections are made “at the time of trial” or “during trial,” respectively. We interpret “trial” here, however, to encompass the entire proceeding in the lower court, and thus may proceed directly to evaluating the retroactivity of Ooetz.
¶9 This interpretation of “at trial” is supported by the underlying rationale of these statutes-that it is ‘fundamentally unfair to fault the trial court for failing to rule correctly on an issue it was never given the opportunity to consider.” State v. Gomez, 2007 MT 111, ¶ 21, 337 Mont. 219, 158 P.3d 442, quoting State v. Martinez, 2003 MT 65, ¶ 17, 314 Mont. 434, 67 P.3d 207. Where the trial court was given an opportunity to rule on the issue, as here, then the objection has been made “at trial” and the defendant has properly preserved the issue for review by this Court. State v. Waters, 1999 MT 229, ¶ 24, 296 Mont. 101, 987 P.2d 1142 (interpreting §46-20-104(2), MCA, as extending through sentencing); see also Commission Comments to §46-20-104, MCA, at 1067 (2010 Annotations) (emphasizing that the appellate court has the authority to “decide all questions raised by the entire proceeding, below”).[1]
¶10 Objecting below at trial is a general requirement of appellate *72 procedure. The District Court ruled that Reichmand was precluded from the retroactive application of Goetz because he failed to object at trial and thus he was not “similarly situated” under the rule from Foster-DeBerry. As mentioned shove, Foster-DeBerry defined ‘Similarly situated” as having raised the issue addressed by the new rule at the trial court level, thereby preserving it for appeal. Although we conclude that Reichmand objected “at trial” below, since the District Court based its conclusion on the “similarly situated” standard in Foster-DeBerry, we take this opportunity to address Foster-DeBerry’s place in our retroactivity jurisprudence.
¶11 In previous Goetz retroactivity decisions, we have interpreted “similarly situated” to be a retroactivity-specific requirement. We first addressed the retroactivity of Goetz in Foster-DeBerry, where we relied on State v. Zivcic, 229 Wis. 2d 119, 124-25, 598 N.W.2d 565, 568 (Wis. App. 1999), for the proposition that “similarly situated” means having raised the same objection below. The Wisconsin court’s definition of “similarly situated” in Zivcic was itself based on an invocation of the U.S. Supreme Court’s decision in Griffith v. Kentucky, 479 U.S. 314, 107 S. Ct. 708 (1987). On closer examination, however, Griffith does not appear to support the Wisconsin court’s position, and it becomes clear that both Griffith and Teague v. Lane, 489 U.S. 288, 109 S. Ct. 1060 (1989), used “similarly situated” only to justify retroactive and prospective application of new rules of procedure. The majority in Griffith used “similarly situated” to explain why the Court’s past policy of excluding “clear break” new rules from retroactive application was inequitable. In Teague, the Court used “similarly situated”to describe how defendants who were still in the same direct appeals pipeline as the defendant in whose case the new rule was announced were denied the benefit of the new rule once their own cases reached the Supreme Court. These usages make clear that the Court’s use of the phrase “similarly situated” is nothing more than a compelling rationale for retroactive application of new rules, rather than limiting new rules to prospective application after the decision is handed down. Thus, it does not appear that there is any convincing support in either the federal rules of retroactivity we have adopted, or in Montana’s own subsequent retroactivity jurisprudence, for interpreting “similarly situated”as having objected below. We therefore overrule our decisions in Foster-DeBerry and State v. Foston, 2009 MT 191, 351 Mont. 85, 209 P.3d 262, insofar as they require an appellant-within the rules of retroactivity-to have raised a Goetz-type objection at trial in order for Goetz to apply retroactively.
*73 ¶12 [1] In conclusion, there is a general rale of appellate procedure that in order to preserve an issue for appeal, the appellant must have raised the issue “at trial.” In the context of retroactivity jurisprudence, however, there is no independent requirement that the appellant have objected below, as Foster-DeBerry suggests. In order to be “similarly situated” for purposes of retroactivity, the defendant merely has to show that his case is pending on direct review or not yet final.
B. The retroactivity of Goetz.
¶13 We next review the District Court’s ruling that Reichmand was not entitled to a new trial as a result of the retroactive application of Goetz. This is a question of law, which we review de novo. Retroactivity jurisprudence in Montana is closely intertwined with federal law. The U.S. Supreme Court recently held that each state has the right to craft its own unique retroactivity jurisprudence, using federal requirements as a floor. Danforth v. Minnesota, 552 U.S. 264, 128 S. Ct. 1029 (2008). That is, the U.S. Supreme Court’s retroactivity analysis for federal constitutional errors is binding upon the states when federal constitutional errors are involved. Danforth’s unequivocal grant of flexibility allows states to hand-pick retroactivity rules for application of new state rules.
¶14 In State v. Egelhoff, 272 Mont. 114, 900 P.2d 260 (1995), we chose to adopt two such rules from Griffith and Teague and applied them to our own retroactive application of new state rules. We held that the following retroactivity principles were binding on the Montana Supreme Court. First: “[A] new rule for the conduct of criminal prosecutions is to be applied retroactively to all cases, state or federal, pending on direct review or not yet final.” Id. at ¶ 21 (citing Griffith, 479 U.S. at 328, 107 S. Ct. at 716). Second: ‘tOjnce a new rule is applied to the defendant in the case announcing the rale, evenhanded justice requires that it be applied retroactively to all who are similarly situated.” Id. at ¶¶ 21-22 (citing Teague, 489 U.S. at 300-01, 109 S. Ct. at 1070). We then held that these new rules would apply retroactively to cases still subject to final decision on direct review as of the date of the opinion.[2] Id. at ¶ 24.
¶15 Thus, Goetz will retroactively apply to Reichmand if the requirements established in Egelhoff are met. As Goetz clearly *74 announces a new rule, and Reichmand’s case is pending on direct review, not yet final, and thus “similarly situated,” we conclude that the requirements in Egelhoff are satisfied. The District Court erred in determining that Goetz was not retroactively applicable to Reichmand. We must next determine whether this error requires a reversal of Reichmand’s conviction. When a trial court commits an error, the record must show that the error was “prejudicial,” i.e. not harmless, or we cannot reverse. MCA §46-20-701. Thus, we will not overturn the District Court despite its incorrect conclusion that Goetz was not retroactive to Reichmand unless this error prejudiced Reichmand’s right to a fair trial.
¶16 To determine whether an error is “prejudicial,” we employ the “cumulative evidence” test set out in State v. Van Kirk, 2001 MT 184, 306 Mont. 215, 32 P.3d 735.
C. Prejudicial error under Van Kirk.
¶17 The first step is to determine whether the claimed error is “structural”error or “trial”error. Structural errors are those that affect the framework within which the trial proceeds, rather than an error in the trial process itself. Id. at ¶ 38. These errors undermine the fairness of the entire proceeding. Examples include errors in jury selection, total deprivation to right to counsel, and lack of an impartial judge. Id. at ¶ 38. These structural errors are presumptively prejudicial and are automatically reversible. In contrast, “trial” errors occur during the presentation of the case to the jury. Trial errors are amenable to qualitative assessment by a reviewing court for prejudicial impact. Id. at ¶ 40. Reichmand’s alleged error is a trial error. It was an error occurring during the presentation of the case to the jury.
¶18 Because we have determined that the error in this case was a “trial” error, the next step in the Van Kirk analysis is to determine whether the error was prejudicial. When inadmissible evidence is introduced and the convicted person alleges prejudice, the burden shifts to the State. The State must then satisfy a two-part test. Id. at ¶¶ 43-44; State v. Peplow, 2001 MT 253, ¶¶ 46-47, 307 Mont. 172, 36 P.3d 922. First, the State must show that “the fact-finder was presented with admissible evidence that proved the same facts as the tainted evidence proved.” Second, the State must demonstrate that “the quality of the tainted evidence was such that there was no reasonable possibility that it might have contributed to the defendant’s conviction.” Van Kirk, ¶¶ 43-44 (emphasis in original). As we observed in Van Kirk, this new test is ‘inarguably more restrictive” than our *75 previous “overwhelming evidence” test. [3] Id. at ¶ 43.
¶19 The audiotape recordings oftwo separate drug transactions, made by wiring a confidential informant, are inadmissible under Goetz and thus ‘tainted.” The recordings or portions of the recordings were played for the jury on three separate occasions during the trial. First, the State played the August 21, 2007 recording of the transaction during Agent David Clark’s testimony. Second, the State played the recording of the August 24, 2007 transaction during the same direct examination of Agent Clark. Third, the State played the audiotape during rebuttal closing. Thus, the State will first need to show that it submitted relevant evidence to prove the same facts as were proved by these recordings, and then will need to show that the “quality” of the recordings was such that there was no reasonable possibility that they might have contributed to Reichmand’s conviction.
¶20 The first recording contains audio of the confidential informant Chor entering the house, asking ‘Is Dallas home?” After a few seconds of silence, Chor asks the other person, ‘You got six?” He responds, ‘Yeah, I got six.” He then counts from one hundred, concluding with “two hundred and ten.” Chor can then be heard counting twenty dollar bills: “One, two, three, four, five. One, two, three, four, five. Two hundred.” He then asks: “And ten?” Chor then presumably hands him the money, saying: ‘Here you go, buddy.” The rest of the tape seems to be small talk followed by Chor’s exit from the house.
¶21 The second recording is of the August 24, 2007 transaction. One can hear Chor knock on the door, enter, and say: ‘Dallas, do you have ten?”To which the other person responds, ‘Yeah.”Chor responds: ‘Ok, I’ll take ten.” After the two briefly struggle to get the math right, the other person eventually adds up the amount: ‘Thirty-five and ten is three hundred and fifty.” Chor counts in tens from forty, ending with three hundred and fifty. The other person can be heard saying, “Man, you are good. Here, have a cigarette.” Chor asks for a beverage, the other person briefly disappears out of the Cl’s microphone range, and then returns to count out one through ten (presumably doling out tablets of morphine). Chor says, ‘Thank you very much. I’m out of *76 here.”
¶22 The jury heard the audio transcribed above during direct examination and during closing. Thus, we consider whether the fact-finder was presented with admissible evidence that proved these same facts. We conclude that the jury was presented with evidence that proved these same facts, through the testimony of Chor, the confidential informant. On direct examination, Chor testified that he set up the August 21, 2007 transaction, went to the residence, bought the pills, and returned to meet the Task Force at a predetermined location. Chor also testified that on August 24, 2007, he bought ten pills from Dallas. Chor’s testimony was admissible and proved, generally, the same facts as the tainted evidence did.
¶23 We therefore move to the second inquiry under Van Kirk’s harmless error analysis: was the quality of the tainted evidence such that there was no reasonable possibility that it might have contributed to the defendant’s conviction? Id. at ¶ 44. It is important here to note that the inquiry does not require us to definitively say whether or not the tainted evidence actually influenced the jury’s decision to convict. Rather, the question is whether the State can show there is no reasonable possibility that the tainted evidence might have contributed to the conviction. As we stated in Van Kirk, and we reemphasize now, this is a very high bar.
¶24 The State’s argument regarding this prong is brief and unpersuasive. The State admits that it used the recordings in response to Reichmand’s defense of misidentification: ‘The primary use of the recordings to refute this defense was to confirm Chor had used the name ‘Dallas’ to refer to the supplier of the morphine tablets.” (Emphasis added.) The recordings confirmed Chor’s testimony, likely bolstering his credibility in the minds of the jurors. Given that the defense had turned a spotlight on Chor’s potential ulterior motives, his shaky mental capacity, and his inability to remember parts of the transactions or names of officers he worked with, there is no doubt the recordings “possibly”influenced the outcome. The recordings provided the jurors with just what they needed in order to fully believe Chor: actual, objectively reliable recordings of everything that happened during both transactions.
¶25 The recordings also filled in chronological gaps in the testimony of the agents who, without the recordings, could only testify to how they prepared Chor for the transactions and their observations of Chor when he again met with agents after the transactions. They could not see the back entry of the house or observe the drug transactions inside *77 the house. The circumstantial evidence was far from conclusive. Chor and the agents all testified that there were other people in the residence at the time of both transactions. The recordings of both transactions constituted objective and qualitatively superior evidence for the jury to compare against Chor’s testimony about the details of the transactions and his identification of Dallas as the dealer. The recordings also filled in large holes in the agents’ testimony regarding the most critical part of the case: the transaction itself.
¶26 It is hard to imagine that after hearing the recordings, a juror would not be more convinced that what Chor claimed happened actually did happen. The State admits to using the recordings as a means of corroborating Chor’s testimony. The state not only played and emphasized both recordings on direct, but also replayed a portion of the recording in its rebuttal closing. That recording was the sole piece of evidence the State presented again to the jury during closing arguments. In light of the above facts, the State has failed to demonstrate there is no reasonable possibility that the recordings might have contributed to the defendant’s conviction.
¶27 The State has not met its burden under Van Kirk, and thus the error is prejudicial and “reversal is compelled.” Id. at ¶ 45. We reverse Reichmand’s conviction and remand for a new trial. Because we find that he is entitled to a new trial, we need not reach the other issues Reichmand presents for appeal.
¶28 Reversed and remanded.
JUSTICES COTTER, WHEAT and MORRIS concur.

 In his dissent, Justice Rice cites three cases for the proposition that post-trial objections do not properly preserve an issue for appeal. State v. McWilliams, 2008 MT 59, ¶¶ 43-47, 341 Mont. 517, 178 P.3d 121; State v. Misner, 2007 MT 235, ¶¶ 24-26, 339 Mont. 176, 168 P.3d 679; State v. Grace, 2001 MT 22, ¶ 35, 304 Mont. 144, 18 P.3d 1008. In each of these cases, we denied appellate review for failure to object contemporaneously to allegedly objectionable material in the prosecutor’s closing argument, citing our longstanding rule that an objection “must be made as soon as the grounds for the objection become apparent” in order to timely preserve the issue for appeal. McWilliams, ¶ 45, citing Grace; Misner, ¶ 24, citing Grace; Grace, ¶ 35, citing State v. Whitlow, 285 Mont. 430, 442, 949 P.2d 239, 247 (1997). In the cited cases, because the grounds for the objection became apparent during the closing argument, we properly applied the rule to block appellate review of post-verdict objections made by the defense. In the present case, in contrast, it is inarguable that the grounds for the objection4he issuance of the Goetz decision and its newly applicable disallowance of key evidence used by the proseeution-were not apparent until after the verdict. Thus, while the result of the present case-that an objection made post-verdict is considered timely-is contrary to the results reached in the cases cited by the dissent, the rule in these cases is applied consistently in our decision today.

 After updating these basic retroactivity principles in Egelhoff, we adopted Justice Harlan’s retroactivity approach to cases on collateral review. Reichmand’s appeal is not yet final. Therefore, the collateral review analysis articulated in the remainder of the Egelhoff opinion is not germane to the inquiry currently before the Court.

 In Van Kirk, we rejected the previous “overwhelming evidence” test, which states that other overwhelming evidence of a defendant’s guilt can render harmless a district court’s error. We observed that over time, this analysis eclipsed the more substantive inquiry of whether the erroneously admitted evidence might have contributed to the conviction. We rejected the old test because it simply tallied the quantity of the admissible evidence of guilt instead of evaluating the qualitative impact the specific inadmissible evidence might have had on the fact-finder.