JUSTICE SHEA,
dissenting.
¶88 I respectfully dissent from the plurality’s opinion. I write separately to note that we appear to be adopting the federal retroactivity framework in this case and to express my reservations about doing so. This decision marks the first time we have acknowledged that we are not bound by the federal retroactivity framework, yet we decide to follow it anyway. In my view, this raises two concerns.
¶89 First, the plurality adopts the federal retroactivity framework on the premise that we have consistently applied this framework and, *107 therefore, stare decisis compels us to continue to do so. However, closer scrutiny of our retroactivity jurisprudence in this regard reflects that it finds its origin in the mistaken premise that we were bound to follow the federal framework when, in fact, we were not. I would decline to perpetuate this mistake in this case. If we elect to continue on this path, however, I believe it is incumbent upon us to acknowledge it is by choice and not federal mandate.
¶90 Second, the federal framework is contrary to controlling Montana law. The federal framework reflects the U.S. Supreme Court’s interpretation of the federal habeas corpus statutes. Montana’s habeas statutes — which I contend should be applied in this case — compel a different result. Our own habeas corpus statutes indicate different restrictions than those created by the federal framework. I believe the conflict between the restrictions our statutes impose on retroactivity and the restrictions the federal framework imposes should be resolved in favor of our statutes, rather than the U.S. Supreme Court’s interpretation of the federal statutes.
¶91 The plurality’s position appears to be that we should apply Teague in this case because we have consistently applied Teague, even since the Supreme Court has made it clear that we are not compelled to do so, and Beach has not demonstrated that our prior jurisprudence is manifestly wrong. Moreover, Beach has only pointed out that we are free to adopt a more expansive retroactivity rule, but has not developed or tested any alternative rule. I address first the plurality’s concerns about the stare decisis effect of our prior jurisprudence, and then the concern about the lack of an alternative ride. I would submit that stare decisis does not compel us to follow Teague, that there is in fact an alternative retroactivity rule contained in our own habeas statutes and pre-Egelhoff opinions, and that we are bound to follow that rule rather than Teague.
¶92 I. Stare Decisis Is Inapplicable When Our Prior Precedent is Based on Manifest Legal Error
¶93 In State v. Egelhoff, we mistakenly assumed we were bound by the federal retroactivity framework. Specifically, we held: “[Teague’s] view of retroactivity for cases on collateral review is binding upon this Court.” State v. Egelhoff, 272 Mont. 114, 126, 900 P.2d 260, 267 (1995) (emphasis added). In 2008, the U.S. Supreme Court explained that we were wrong in Egelhoff, and that we are not bound to follow federal retroactivity rules. In Danforth v. Minnesota, the U.S. Supreme Court held that “[s]ince Teague is based on statutory authority that extends only to federal courts applying a federal statute, it cannot be read as imposing a binding obligation on state courts.” Danforth v. Minnesota, *108 552 U.S. 264, 278-79, 128 S. Ct. 1029, 1040 (2008). As the plurality correctly notes, the U.S. Supreme Court explicitly addressed our mistaken interpretation of Teague as being binding upon us. See Danforth, 552 U.S. at 281, 128 S. Ct. at 1042 (citing Egelhoff and noting Montana as one of only three state courts to mistakenly assume we were bound by federal retroactivity rules).
¶94 This Court has only addressed Danforth once, in State v. Reichmand, 2010 MT 228, 358 Mont. 68, 243 P.3d 423. The Reichmand opinion contains two significant mistakes. First, we held in Reichmand that we voluntarily adopted the retroactivity rule in Teague, stating: “In State v. Egelhoff... we chose to adopt two [retroactivity] rules from Griffith and Teague and applied them to our own retroactive application of new state rules.” Reichmand, ¶ 14 (emphasis added). In fact, we did not choose to adopt the Teague retroactivity rule in Egelhoff; we mistakenly concluded we were bound to follow the Teague retroactivity rule. Egelhoff, 272 Mont. at 126, 900 P.2d at 267.
¶95 Second, Reichmand mistakenly summarized the holding in Dansforth as stating that states may adopt their own retroactivity rules for new state constitutional errors, but not for new federal constitutional rules:
The U.S. Supreme Court recently held that each state has the right to craft its own unique retroactivity jurisprudence, using federal requirements as a floor. That is, the U.S. Supreme Court’s retroactivity analysis for federal constitutional errors is binding upon the states when federal constitutional errors are involved. Danforth’s unequivocal grant of flexibility allows states to hand-pick retroactivity rules for application of new state rules.
Reichmand, ¶ 13 (emphasis in original) (citation omitted). At first blush, this seems correct — and indeed it would be correct if retroactivity arose from the new constitutional rules themselves. Danforth, however, held that retroactivity arises not from the constitutional rule itself, but from the remedy — that is, the federal habeas corpus statutes. Since the federal retroactivity framework derives from the federal habeas statutes — which are applicable only to federal courts — it cannot be binding on state courts. Danforth’s holding states this clearly: “Since Teague is based on statutory authority that extends only to federal courts applying a federal statute, it cannot be read as imposing a binding obligation on state courts.” Danforth, 552 U.S. at 278-79, 128 S. Ct. at 1040. Thus, Reichmand’s assertion that the federal framework “is binding upon the states when federal constitutional errors are involved” is incorrect.
¶96 ReichmancFs summary of Danforth mirrors the Danforth dissent’s *109 argument, not the majority opinion. The Danforth dissent argued that retroactivity arises from the opinion granting the new constitutional right, not the federal habeas statutes. Thus, the dissent reasoned that states are free to craft whatever retroactivity rules they wish for new state constitutional rules, but are bound by the federal retroactivity frameworkfornewfederal constitutional rules. Specifically, the dissent argued:
State courts are the final arbiters of their own state law; this Court is the final arbiter of federal law. State courts are therefore bound by our rulings on whether our cases construing federal law are retroactive.... States [can] apply their own retroactivity rules only to new substantive rights under their own law, not to new federal rules announced by this Court.
Danforth, 552 U.S. at 291-92, 295, 128 S. Ct. at 1047, 1049 (Roberts, C.J., dissenting) (internal quotations omitted). It appears that in Reiehmand. we mistakenly summarized the dissenting opinion in Danforth, rather than the actual holding.
¶97 To summarize, we mistakenly believed ourselves bound by the federal retroactivity rules iaEgelhoff. The U.S. Supreme Court pointed out our mistake, and effectively overruled it, in Danforth. Reiehmand addressed Danforth, but misread Egelhoff as a voluntary adoption of the federal rule, and then perpetuated the mistaken belief that we must follow the federal framework when determining the retroactivity of new federal constitutional rules. The only case in which we addressed retroactivity since Reiehmand, was State v. Cook, 2012 MT 34, 364 Mont. 161, 272 P.3d 50, which followed Reiehmand and the federal rules without substantive discussion. This is the jurisprudence upon which the plurality relies in determining that Teague articulates the appropriate retroactivity rule in Montana.
¶98 The plurality opinion acknowledges the mistake we made in Egelhoff, but not its broader implication. As the plurality points out: “Under this Court’s policy of stare decisis, we keep faith with precedent "unless it is demonstrably made to appear that’ our precedent ‘manifestly is wrong.’ ” Opinion, ¶ 29 (quoting State ex rel. Perry v. District Court, 145 Mont. 287, 310, 400 P.2d 648, 660 (1965) (internal quotations omitted)). Since the U.S. Supreme Court has explicitly told us our precedent is wrong, and we have never corrected that mistake, I contend that qualifies as “ ‘demonstrably made to appear thaf our precedent ‘manifestly is wrong.’ ”
¶99 This case marks the first tíme that a party has asked us to reconsider our retroactivity rule in light of Danforth. The parties in Reiehmand did not mention Danforth, much less ask us to depart from *110 federal retroactivity jurisprudence. See generally Appellant’s Briefand Appellee’s Brief, State v. Reiehmand, (DA 09-0057). It is clear that neither Egelhoff nor Reiehmand voluntarily adopted Teague as Montana’s retroactivity rule, since Egelhoff erroneously concluded the federal rules were binding upon us, and Reiehmand erroneously concluded that Egelhoff was a voluntary adoption of the federal rules. The Court’s opinion here marks the first time we have acknowledged that we are not bound by federal retroactivity rules and, therefore, marks our first conscious, voluntary adoption of Teague. A plurality of this Court seems to favor this course of action and, consequently, may adopt Teague as our rule. However, I am concerned that the only basis for our adoption of the federal framework is “precedent” that is merely ostensible at best and manifestly wrong at worst.
¶100 The plurality asserts that we voluntarily adopted the federal framework in Reiehmand, contending: “After acknowledging our ability to choose any standard, [Reiehmand] applied the federal retroactivity framework.” Opinion, ¶ 28. However, Reiehmand was grounded upon the misapprehension that we had already chosen to adopt the federal framework in Egelhoff, as we unambiguously expressed: “In State v. Egelhoff, we chose to adopt [the federal framework] and applied them to our own retroactive application of new state rules.... Thus, Goetz will retroactively apply to Reiehmand if the requirements established in Egelhoff are met.” Reiehmand, ¶¶ 14-15. It is beyond dispute that we did not choose to adopt the federal retroactively framework in Egelhoff-, we mistakenly believed ourselves bound to adopt it.[1] Since Reiehmand failed to acknowledge that mistake — instead erroneously characterizing our adoption of the federal framework in Egelhoff as a “choice” — I remain unconvinced that this Court has ever voluntarily adopted the federal framework before today. If the plurality sees fit to do so with this opinion, that is certainly its prerogative. I submit only that we are creating precedent today rather than following it.
¶101 II. The Appropriate Retroactivity Rule Under Montana Law
¶102 As Justice Harlan noted of the U.S. Supreme Court’s *111 retroactivity jurisprudence prior to Teague: “Clearly, it is at least fair to regard this issue as not yet settled by this Court. Consequently, I go on to inquire how it ought to be resolved.” Mackey v. United States, 401 U.S. 667, 688, 91 S. Ct. 1160, 1165 (1971) (Harlan, J., concurring and dissenting).
¶103 Since the federal retroactivity rules are based on the federal habeas corpus statutes, a natural place to begin an analysis of the correct retroactivity rule for Montana would be the Montana habeas corpus statutes. The Montana writ of habeas corpus is defined by § 46-22-101(1), MCA, and provides that “every person imprisoned or otherwise restrained of liberty within this state may prosecute a writ of habeas corpus to inquire into the cause of imprisonment or restraint and, if illegal, to be delivered from the imprisonment or restraint.” Section 46-22-101(1), MCA.
¶104 “In the construction of a statute, the office of the judge is simply to ascertain and declare what is in terms or in substance contained therein, not to insert what has been omitted or to omit what has been inserted.” Section 1-2-101, MCA. We should not, then, insert restrictions into our own habeas corpus statute that the Legislature has chosen to omit. Moreover, “When a statute is equally susceptible of two interpretations, one in favor of natural right and the other against it, the former is to be adopted.” Section 1-2-104, MCA. To the extent we might interpret the habeas statute to include restrictions against natural rights, we are instructed not to do so if the statute is equally susceptible of an interpretation in favor of natural rights.
¶105 This being noted, the seeminglybroadrightgrantedby § 46-22-101(1), MCA, is appropriately constrained by § 46-22-102, MCA, which places a restriction on what sorts of claims may be raised in a habeas proceeding, and which may be subject to the retroactive application of new constitutional rules on habeas review. This statute provides: “A person may not be released on a writ of habeas corpus due to any technical defect in commitment not affecting the person’s substantial rights.” Section 46-22-102, MCA. Unlike § 46-22-101(2), MCA, which we held unconstitutional in Lott v. State, 2006 MT 279, 334 Mont. 270, 150 P.3d 337, § 46-22-102, MCA, comports with both the protection of the writ enshrined in the Montana Constitution and the historical purposes of habeas corpus.[2]
*112 ¶106 Thus, I believe that the only restriction with support in Montana law would be a restriction that prevents claims that raise only technical defects that do not affect the petitioner’s substantial rights. An appropriate definition of a "technical defect” can be located in Coleman v. State, 194 Mont. 428, 633 P.2d 624 (1981), a habeas case that predates Egelhoffs mistaken determination that we were bound by Teague. In Coleman, we held that a new constitutional rule was not retroactive because it was "not one aimed at overcoming an aspect of the criminal trial that substantially impairs its truth-finding function thereby raising questions as to the accuracy of guilty verdicts in past trials.” Coleman, 194 Mont. at 503, 633 P.2d at 670. Based on that reasoning, an appropriate definition of a "technical defect” would be one that does not raise significant questions as to the accuracy of the verdict or the sentence.
¶107 A technical defect restriction on habeas review would mean that some categories of new constitutional rules appropriately would never be retroactive. For example, new search and seizure rules and the attendant exclusionary rule would not be retroactive because their violation does not undermine confidence in the validity of a conviction or sentence. As we noted in Coleman: “[T]he purpose of the exclusionary rule to deter police misconduct is not served at the post-appeal stage and application of the exclusionary rule deflects the truth-finding process.” Coleman, 194 Mont. at 503, 633 P.2d at 670. Since our own habeas statutes forbid only habeas claims based on "technical defects,” and our prior habeas jurisprudence suggests an appropriate definition of "technical defect,” I believe we compound our previous errors by adopting Teague when we clearly are not bound to do so, and we have a more compelling alternative.
¶108 Since there is a statutory basis for a Montana-specific retroactivity rule, I submit we are bound to follow the Montana-specific rule over one based on Teague. The U.S. Supreme Court has stated that the federal retroactivity framework arises from interpretation of the federal habeas corpus statutes, not the U.S. Constitution: “Teague is based on statutory authority that extends only to federal courts applying a federal statute, it cannot be read as imposing a binding obligation on state courts ”Danforth, 552 U.S. at 278-79, 128 *113 S. Ct. at 1040 (emphasis added). Since the federal retroactivity framework finds no basis in the U.S. Constitution, the Montana Constitution, nor the statutes of this state, our adoption of it here can only be characterized as common law. Where the common law and statute conflict, the statute shall take precedent. Section 1-1-108, MCA, states:
In this state there is no common law in any case where the law is declared by statute. But where not so declared, if the same is applicable and of a general nature and not in conflict with the statutes, the common law shall be the law and rule of decision.
At a minimum, this means that before we may adopt a common law rule, we must ascertain that it is “not in conflict with the statutes.” Comparing the one restriction placed on habeas corpus by our statutes and Teague's restrictions based on the distinction between substantive and procedural rights evinces a conflict between Teague and Montana statutes. Therefore, I contend we are compelled to follow our statutes over Teague.
¶109 Similarly, I believe our prior resolution of a similar issue regarding restrictions on which fundamental rights may be asserted in a collateral proceeding dictates that we should follow Montana statutory law rather than the U.S. Supreme Court’s non-binding opinions. In State v. Maine, we rejected the U.S. Supreme Court’s restriction on which constitutional rights may be asserted in a collateral challenge to a prior conviction. State v. Maine, 2011 MT 90, ¶¶ 31-32, 360 Mont. 182, 255 P.3d 64. Maine addressed whether defendants could collaterally attack a prior conviction as unconstitutional when that conviction was being used to enhance punishment for a later crime — in effect, the question was whether you can hold a mini-habeas proceeding attacking a prior conviction in the middle of sentencing for a later crime. At the time that we were deciding Maine, the U.S. Supreme Court had decided Custis v. United States, 511 U.S. 485, 114 S. Ct. 1732 (1994), in which it held that such a collateral attack could occur only if the prior conviction violated Gideon. The State asked us to adopt Custis out of considerations of finality and judicial economy. See Maine, ¶¶ 16-17 (citing Custis). We rejected the U.S. Supreme Court’s reliance on judicial economy and finality as justification for limiting which constitutional rights may be asserted on collateral review because we saw no principled basis for distinguishing between fundamental rights. We held: “[W]e disagree with the premise that some [fundamental] rights are sufficiently ‘unique’ to merit consideration in collateral challenges, while others are not so deserving.... [T]he existence of administrative burdens in *114 evaluating collateral challenges does not justify limiting the particular rights which may be asserted.” Maine, ¶¶ 31-32. The concurrence further noted:
While the strong interest in finality of judgments supports placing a limit on collateral attack of underlying convictions, there is no textual basis for a rule that allows such attack for the violation of one fundamental right but not for the violation of another, equally fundamental right. 1 therefore agree with the Court’s decision to reject that artificial distinction in favor of a rule of convenience.
Maine, ¶ 45 (Baker, J., concurring). That reasoningis instructive in the present case. Similar to Custis, Teague allows some constitutional rights to be asserted on collateral review, but not others. As the Maine concurrence made clear, where there is no basis in Montana law for the particular distinctions the federal courts make between fundamental rights, we should decline to follow the federal rule. Teague’s distinction between substantive and procedural rights finds no basis in Montana law. The same considerations that led us to reject Custis should apply with equal force in considering whether to adopt Teague.
¶110 I agree whole-heartedly with the Maine concurrence that the strong interest of finality of judgments supports placing a limit on collateral attacks, and that any such limit should arise from a textual basis. While there is no such textual basis for limitations on which rights may be asserted in the type of proceeding discussed in Maine, our habeas statutes and yae-Egelhoff opinions constitute an appropriate textual basis for limitations on collateral attack in habeas proceedings. For that reason, I believe the appropriate — indeed, the mandatory — course would be to follow the statutes’ limitations rather than Teague’s, which have no basis in Montana law.
¶111 I share the plurality’s concern about the parties neither proposing nor testing a retroactivity rule alternative to Teague. I am not convinced, however, that Beach’s failure to propose an alternative necessarily means we cannot inquire into the appropriate retroactivity rule.
¶112 1 would note that the parties in Teague did not ask the U.S. Supreme Court to reexamine its retroactivity rules, nor did they develop or test a new proposed rule as the plurality suggests must be done before this Court can adopt a new rule. Bather, the Teague Court sua sponte adopted a new rule because it determined that its retroactivity analysis needed to be clarified in light of the lack of a unifying theme in its prior precedent. Teague, 489 U.S. at 300, 109 S. Ct. at 1069-70. If the lack of a unifying theme is sufficient for the U.S. Supreme Court to sua sponte reexamine its rules and adopt an entirely *115 new approach, then I contend a line of precedent founded on a mistaken legal assumption warrants similar reexamination of our own rules when a party has expressly asked us to do so.
¶113 More importantly, the circumstances here do not implicate our usual concern about adopting a new rule that was not argued by the parties. Whether we adopt Teague or some other rule, we will be adopting a rule that was not argued by the parties. No party has ever asked us to adopt Teague; therefore, its merits have never been tested in the manner the plurality suggests must happen before we adopt a new rule. The plurality asserts that we adopted the federal framework in Reichmand. Opinion, ¶ 28. Assuming that were correct, then we adopted the federal framework without any of the argument the plurality asserts is a necessary antecedent to adoption of a new rule. Thus, we have either already adopted a rule that no party has ever argued, or we must do so here. Moreover, the rule I am proposing we adopt is merely a plain-language interpretation of our habeas statutes. It is our job to state what the relevant law is when deciding a case, and the habeas statutes’ plain language provides us ample guidance to state the appropriate retroactivity rule for Montana.
¶114 This case provides us with the choice of either grounding our retroactivity rule on Montana statutory law or on a precedent that both the U.S. Supreme Court, and the plurality, recognize was incorrectly decided. I would choose the former. Retroactivity should not rest on a distinction between substantive versus procedural as per Teague, but rather should be an analysis as to whether the claim raises merely a technical defect that does not affect the person’s substantial rights as per § 46-22-102, MCA. I submit that the right to be sentenced in conformity with the Eighth Amendment of the U.S. Constitution and Article II, § 22 of the Montana Constitution is a substantial right which merits retroactive application. In this case, since Miller, Roper, and Graham have held that sentencing a youth implicates these substantial rights, and the record is completely devoid of any indication that the sentencing judge “[took] into account how children are different, and how those differences counsel against irrevocably sentencing them to a lifetime in prison” when sentencing, Miller, 567 U.S. at_, 132 S. Ct. at 2469, I would remand the case for the District Court to consider Beach’s youth at the time he committed the crime. Some juvenile offenders may commit crimes so heinous that they warrant incarceration for life. Indeed, it may be that Beach merits the same sentence, even after considering his youth at the time of the crime. But before that sentence is imposed, the District Court should explicitly consider whether Beach was “ ‘the rare juvenile offender *116 whose crime reflects irreparable corruption,’ ” and not “ ‘the juvenile offender whose crime reflects unfortunate yet transient immaturity.’ ” Miller, 567 U.S. at_, 132 S. Ct. at 2469 (quoting Roper, 543 U.S. at 573, 125 S. Ct. at 1197; Graham, 560 U.S. at 68, 130 S. Ct. at 2026).

 It is also worth noting that Egelhoff did not involve any new state rules. The Egelhoff opinion was based entirely on federal law as evidenced hy the U.S. Supreme Court’s reversal of our decision there. See Montana v. Egelhoff, S18 U.S. 37, 116 S. Ct. 2013 (1996). Thus, Egelhoff could not have adopted the federal retroactivity rules and applied them to new state rules.

 “ ‘From the time of the Magna Charta, the Great Writ of Habeas Corpus has been liberally employed as a means of guaranteeing that justice] be accomplished and that a miscarriage of justice will be remedied. For at its heart, the writ represents an *112 acknowledgment of the principle that the rights of freedom of the individual are worthy of protection.’ ” Lott, ¶ 20 (quoting State v. Perry, 232 Mont. 455, 462-63, 758 P.2d 268, 273 (1988) (overruled on other grounds by State v. Clark, 2005 MT 330, 330 Mont. 8, 125 P.3d 1099)) (citation omitted).