DA 14-0615

FILED

August 5 2015

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 14-0615

IN THE SUPREME COURT OF THE STATE OF MONTANA

2015 MT 227

STATE OF MONTANA,

> Plaintiff and Appellee,

v.

RYAN PATRICK MALONEY,

> Defendant and Appellant.

APPEAL FROM:     District Court of the Second Judicial District,
In and For the County of Silver Bow, Cause No. DC-13-50
Honorable Kurt Krueger, Presiding Judge

COUNSEL OF RECORD:

> For Appellant:
>
> > Carolynn M. Fagan, Fagan Law Office, P.C.; Missoula, Montana
>
> For Appellee:
>
> > Timothy C. Fox, Montana Attorney General, Mardell Ployhar, Assistant
> > Attorney General; Helena, Montana
> >
> > Eileen Joyce, Silver Bow County Attorney, Ann M. Shea, Deputy
> > County Attorney; Butte, Montana

Submitted on Briefs:   June 3, 2015
Decided:   August 5, 2015

Filed:

_____
Clerk

Justice Michael E Wheat delivered the Opinion of the Court.

¶1     Ryan Patrick Maloney (Maloney) appeals from the order of the Montana Second Judicial District Court, Silver Bow County, denying his motion to dismiss the criminal charges against him for lack of a speedy trial. We affirm.

## PROCEDURAL AND FACTUAL HISTORY

¶2     During the pendency of this case, Maloney was also involved in concurrent prosecutions or disciplinary proceedings in Jefferson County and in Butte-Silver Bow DUI Court. The disposition of those proceedings is relevant to our speedy trial and due process analyses. Therefore, we will first describe the facts of the instant case and then explain the circumstances of the concurrent proceedings.

### The Instant Case

¶3     On April 2, 2013, Maloney was arrested following an incident at his house in Butte-Silver Bow County where he made a number of suicidal threats while intoxicated. Maloney's children were at the house at the time and contacted their mother, who alerted law enforcement. Following the arrival of law enforcement officers, Maloney's children and brother left the house, leaving Maloney alone inside. The children informed the officers that Maloney was armed. The officers attempted to convince Maloney to exit the house, but he refused and threatened to kill himself if officers approached. Later, Maloney fired a shot through the wall of his house which struck an officer, causing minor injuries. Eventually, Maloney agreed to exit the house. When he did so he had a knife embedded in his abdomen. The officers arrested Maloney.

¶4     That same day, April 2, 2013, Maloney was charged in Butte-Silver Bow County Justice Court with five counts of felony criminal endangerment in violation of § 45-5-207, MCA, and two counts of felony assault on a peace officer in violation of § 45-5-210, MCA.

¶5     An information was filed in Butte-Silver Bow County District Court on May 1, 2013. Trial was scheduled for October 7, 2013. On August 27, 2013, Maloney filed a motion to re-schedule the trial date due to a conflict. Maloney requested the trial take place at the "earliest possible date" after October 7, 2013. The District Court re-scheduled the trial for November 18, 2013. On November 8, 2013, Maloney pleaded guilty to one count of criminal endangerment and one count of assaulting a peace officer.

¶6     On November 15, 2013, the court ordered a pre-sentence investigation report ("PSI") prepared. The PSI was assigned to a probation officer in Lewis and Clark County, who requested documents from the State including the case file, victims' contact information and victim impact statements. The State provided the requested documents to the probation officer in January 2014. In February and March, 2014, Maloney provided the probation officer with two letters of support. An Affidavit of Pecuniary Loss dated April 17, 2014, was provided to the probation officer for the purposes of determining restitution.

¶7     On April 25, 2014, the probation officer delivered the prepared PSI to the State's prosecutors. On May 5, 2014, the State filed a motion asking the court to set a sentencing hearing. That same day, Maloney filed a motion to dismiss for lack of a speedy trial.

3

The District Court denied Maloney's motion in an order dated June 2, 2014. On July 17, 2014, the District Court sentenced Maloney to a total of 30 years with five years suspended. Maloney appeals the District Court's denial of his motion to dismiss.

**Concurrent Proceedings**

¶8 On March 26, 2013, approximately one week before his arrest in the instant case, Maloney was arrested and charged with Driving Under the Influence of Alcohol (DUI), Fourth Offense, in Jefferson County. He was released on bond on March 27, 2013. At the time of the Jefferson County offense, Maloney was participating in Butte-Silver Bow DUI Court.

¶9 Following the Jefferson County charge and the April 2, 2013 incident in the instant case, the DUI Court issued a warrant for Maloney's arrest. He was held without bond until his sentencing on May 17, 2013. He was sentenced to six months incarceration at the Butte-Silver Bow Detention Center with 38 days credit for time served. On February 26, 2014, the Fifth Judicial District Court in Jefferson County sentenced Maloney to thirteen months incarcerated followed by a five year suspended sentence.

¶10 Serving these sentences concurrently, Maloney was incarcerated or scheduled to be incarcerated from April 9, 2013 through November 9, 2014. Thus, his scheduled incarceration in the concurrent proceedings encompassed almost the entire duration of the relevant procedural portion of the instant case – pre-sentencing – which began with his April 2, 2013 arrest and ended with his July 17, 2014 sentencing. Throughout the time

Maloney argues his rights were being violated by prosecutorial delay, he was serving time for other charges.

## ISSUES

¶11 Maloney presents the question of whether his right to a speedy trial was violated by pre-trial and pre-sentencing delays. However, as discussed below, we recently adopted a new standard for analyzing post-trial, pre-sentencing delays that is distinct from our pre-trial delay analysis. We therefore reframe the issues presented as follows:

1. *Was Maloney's right to a speedy trial violated as a result of excessive pre-trial delays caused by the State?*

2. *Was Maloney's right to due process violated as a result of excessive post-trial, pre-sentencing delays caused by the State?*

## STANDARDS OF REVIEW

¶12 We review a district court's denial of a motion to dismiss in a criminal case de novo for correctness. *State v. Betterman*, 2015 MT 39, ¶ 11, 378 Mont. 182, 342 P.3d 971. We will affirm a district court if it reached the correct result, even if it reached that result for an incorrect reason. *Betterman*, ¶ 11.

## DISCUSSION

¶13 In *State v. Mooney*, 2006 MT 121, ¶ 15, 332 Mont. 249, 137 P.3d 532 (overruled on other grounds by *State v. Ariegwe*, 2007 MT 204, ¶ 102, n.9, 338 Mont. 442, 167 P.3d 815), we held that the right to a speedy trial continues through sentencing. Later, in *Ariegwe*, we laid out in detail a four factor balancing test that courts should use to analyze whether a defendant's right to a speedy trial had been violated. *Ariegwe*, ¶ 113.

The four factors consisted of: 1) the length of the delay, 2) the reasons for the delay, 3) the accused's responses to the delay, and 4) prejudice to the accused caused by the delay. In its order denying Maloney's motion to dismiss, the District Court applied this four-part analysis and concluded that Maloney's speedy trial right had not been violated.

¶14 Subsequent to the District Court issuing its order, we reconsidered the question of whether the right to a speedy trial applies to the period of time between the disposition of a case and sentencing. *Betterman*, ¶¶ 17-24. We concluded that the right to a speedy trial does not apply to the sentencing period, thus overruling *Mooney*. *Betterman*, ¶ 25. Instead, we held that due process protects a defendant from unreasonable delay in sentencing. *Betterman*, ¶ 27. We went on to articulate a balancing test for due process violations in sentencing delay, stating:

> if a sentencing delay is purposeful and oppressive, then we must determine that there has been a constitutional due process violation. The determination of whether a delay is oppressive incorporates considerations of whether the defendant has suffered prejudice and the degree and nature of that prejudice. Neither factor is to be considered dispositive. Though the reasons for a delay may be less than purposeful, or the prejudice caused by the delay less than oppressive, there may still be a constitutional violation when these two considerations are balanced against one another. Each case requires an independent analysis with consideration of all of the circumstances.

*Betterman*, ¶ 32.

¶15 The District Court issued its order based on *Mooney* and *Ariegwe* on June 2, 2014. Maloney filed his opening brief on appeal on January 5, 2015. On February 10, 2015, we published our *Betterman* opinion. On March 31, 2015, the State filed its appellee brief,

addressing the case in the context of *Betterman*. A rule affecting criminal procedure is retroactively applied to cases pending on direct review. *State v. Reichmand*, 2010 MT 228, ¶ 12, 358 Mont. 68, 243 P.3d 423. Because this case was pending on direct review when *Betterman* was decided, our holding in *Betterman* retroactively applies. Furthermore, we note that Maloney did not seek to supplement his opening brief after we released our *Betterman* decision. Presumably this was due to the fact that the factors we enunciated in *Betterman* for analyzing a due process violation for sentencing delay (whether the delay was purposeful and oppressive, including consideration of prejudice to the defendant) are substantially similar to the four factor balancing test for speedy trial violation set forth in *Ariegwe* and relied upon by the District Court (the length of the delay, the reasons for the delay, the accused's responses to the delay, and prejudice to the accused caused by the delay). Given the record and relevant legal standards, we are able to analyze Maloney's claim under the *Betterman* test based on his arguments advanced for the *Ariegwe* test without further briefing or fact-finding.

¶16 Having determined that *Betterman* applies, we now face a two-part inquiry. First, we examine whether Maloney's right to a speedy trial was violated due to post-arrest, pre-conviction delay. Second, we consider whether Maloney's right to due process was violated due to post-conviction, pre-sentencing delay.

**Speedy Trial**

¶17     *1. Was Maloney's right to a speedy trial violated as a result of excessive pre-trial delays caused by the State?*

¶18     The four factors a court must consider when determining whether a defendant's right to a speedy trial has been violated are: a) the length of the delay, b) the reasons for the delay, c) the accused's responses to the delay, and d) prejudice to the accused caused by the delay. *Ariegwe*, ¶ 113. The District Court considered each issue and concluded that Maloney's speedy trial right had not been violated. However, the District Court applied these factors to the entire delay – from arrest to sentencing – not the narrower delay between arrest and disposition that is the proper subject of a speedy trial analysis. We will therefore address each factor in turn, focusing our inquiry on the time between the date the State arrested Maloney and the date of his guilty plea.

a) The Length of the Delay

¶19     Delay in bringing a defendant to trial is measured from the date of accusation to the date the case is disposed of, either by the beginning of trial or by plea. *Ariegwe*, ¶ 43. The first step in determining whether a defendant's speedy trial right has been violated is to determine whether that delay was more than 200 days. We have held that 200 days is a threshold. If the delay was less than 200 days, then no further analysis is necessary to conclude that the right to a speedy trial has not been violated. *Ariegwe*, ¶ 107. If the delay was more than 200 days we must consider and balance all four speedy trial factors. *Ariegwe*, ¶ 107. The longer the delay past the 200 day mark, the stronger the

presumption of prejudice to the defendant, and the greater the burden on the State to justify the delay. *Ariegwe*, ¶ 107.

¶20　　Maloney was arrested and charged on April 2, 2013. His trial was originally scheduled for October 7, 2013, 188 days later. The trial date was continued at Maloney's behest until November 18, 2013. However, Maloney pleaded guilty on November 8, 2013, 220 days after he was arrested. Because his guilty plea marked the disposition of the case, pre-trial delay must be calculated to that day. The 220 day delay exceeds the 200 day threshold for speedy trial analysis. We therefore proceed to consider the remaining factors.

b) The Reasons for the Delay

¶21　　Under this factor, a court must identify each period of delay and attribute that delay to the appropriate party. *Ariegwe*, ¶ 108. All delays not demonstratively caused by the defendant are attributed to the State. *Ariegwe*, ¶ 108. Institutional reasons for delay, such as crowded court dockets, weigh less heavily against the State than lack of diligence or bad faith delay tactics. *Ariegwe*, ¶ 108.

¶22　　Maloney does not contest the fact that, of the 220 days between arrest and pleading, 32 of those days are attributable to his motion to continue the trial date. Maloney contends that the remaining 188 days are attributable to the State, but does not argue that the State was not diligent or acted in bad faith during that period.

9

c) The Accused's Responses to the Delay

¶23    Under this third factor, a court considers the defendant's conduct with respect to the delays, specifically as regards the defendant's objection or acquiescence to pre-trial delays. *Ariegwe*, ¶ 110. A court must examine such circumstances as:

> the timeliness, persistence, and sincerity of the objections, the reasons for the acquiescence, whether the accused was represented by counsel, the accused's pretrial conduct (as that conduct bears on the speedy trial right), and so forth. The sum of this evaluation--i.e., the totality of the accused's various responses to the delays in bringing him or her to trial--is indicative of whether he or she actually wanted a speedy trial, which in turn informs the inquiry into whether there has been a deprivation of the right.

*Ariegwe*, ¶ 110. In making this examination, a court should not presume that the defendant did not wish to have a speedy trial solely because he or she acquiesced to delays or did not object early and often. *Ariegwe*, ¶ 82.

¶24    There is little in the record to indicate Maloney's responses to the delays prior to his guilty plea. Maloney points out that, in moving the District Court for a continuance, he requested the trial be rescheduled for the soonest possible date. Thus, on the one hand Maloney was consenting to extend the duration of the pre-trial period, while on the other hand requesting the court to make the extension as brief as possible. "[C]onduct evidencing a sincere desire to be brought to trial promptly weighs in favor of the accused in the overall balancing, whereas conduct demonstrating a desire to avoid trial weighs against the accused in the overall balancing." *Ariegwe*, ¶ 85. Maloney's pre-trial conduct falls squarely in the middle and does not weigh strongly one way or the other. We are satisfied, however, that Maloney did not actively demonstrate an intent to waive

10

his right to a speedy trial. Courts "should not presume acquiescence in the loss of fundamental rights." *Ariegwe*, ¶ 83 (quoting *Barker v. Wingo*, 407 U.S. 514, 525-526, 92 S. Ct. 2182, 2189 (1972)). Furthermore, the State does not argue that Maloney waived his speedy trial right. Based on the record, it appears Maloney neither waived his right to a speedy trial nor was particularly active in enforcing that right before filing his motion to dismiss just prior to sentencing.

### d) Prejudice to the Accused Caused by the Delay

¶25 The fourth prong of the speedy trial test requires a court to consider whether the defendant has been prejudiced by the delay. This question must be resolved in light of the interests the speedy trial right is designed to protect. *Ariegwe*, ¶ 86. The United States Supreme Court has identified three interests fundamental to speedy trial protection: i) prevention of oppressive pretrial incarceration, ii) minimization of anxiety and concern of the accused, and iii) preservation of the accused's ability to mount an effective defense. *Ariegwe*, ¶ 88 (citing *Barker*, 407 U.S. at 532, 92 S. Ct. at 2193). We will address each in turn.

### i) Oppressive Pretrial Incarceration

¶26 Maloney argues that his pretrial incarceration was oppressive both for the length of time involved and because he was unable to participate in the Warm Springs Addiction Treatment and Change (WATCh) program while incarcerated in the Butte-Silver Bow Corrections Facility. Maloney also points out that we have referred to time in jail as

11

"dead time" and catalogued some of the detrimental effects of incarceration, including loss of employment, disruption of family life, and idleness. *Ariegwe*, ¶ 89.

¶27 The District Court found that Maloney's pretrial incarceration was not oppressive because Maloney was earning time served for his six month DUI Court sentence while awaiting trial in this matter. We agree with the District Court. A speedier trial would not have meant Maloney's release. Furthermore, we note, as did the District Court, that Maloney was receiving chemical dependency treatment while incarcerated. Maloney speculates that the WATCh program would serve him better. However, speculative claims are insufficient to establish prejudice. *Betterman*, ¶ 35.

ii) Minimization of Anxiety and Concern

¶28 Here, Maloney essentially restates his arguments regarding oppressive incarceration. He argues that he was in need of alcohol and mental health treatment, that the treatment provided to him was insufficient, and that as a result of the trial delay he suffered anxiety and concern.

¶29 We reiterate that speculative claims are insufficient to establish prejudice. Maloney admits that he presented no evidence on this issue at the hearing on his motion to dismiss. Rather, he asks us to infer his anxiety and concern. This we are unable to do given the record before us, especially considering that Maloney was, while awaiting trial, serving a six month sentence from the DUI Court with a thirteen month sentence from Jefferson County to follow. Without further evidence on the record we cannot infer from

the circumstances that Maloney's concern and anxiety over the pre-trial delay amounted to prejudice.

### iii) Preservation of Accused's Defense

¶30 The District Court properly found that, because Maloney pleaded guilty, pre-trial delay did not prejudice his ability to mount a defense. Maloney does not contest this finding.

### e) Balance of Speedy Trial Factors

¶31 On balancing the factors above we agree with the District Court that the State did not violate Maloney's right to a speedy trial. We find the length of the delay and the reasons for the delay to be most compelling in reaching this conclusion. Specifically, we consider it very significant that, had Maloney himself not moved for a continuance, trial would have occurred within the 200 day threshold and there would have been no need for a full speedy trial inquiry.

¶32 Furthermore, though we recognize that Maloney did not waive his right to a speedy trial, nothing in the record evidences a particular urgency on Maloney's part which would weigh in favor of finding that he was prejudiced by a delay of 20 days beyond the speedy trial threshold, especially when the delay was due in part to his own continuance. Finally, the record does not support Maloney's claims of prejudice through oppressive incarceration or undue anxiety and concern. Primarily this is due to the fact that Maloney was scheduled to be incarcerated up to and well beyond the trial date, and while incarcerated Maloney was being credited with time served. Maloney's claim that

13

he was prejudiced because he was prevented from entering the WATCh program is overly speculative. Maloney presented no evidence as to why the available chemical dependency program was deficient or why WATCh would be a more satisfactory alternative. While we applaud Maloney's desire to receive treatment, his wish to participate in a different treatment program alone is insufficient to show prejudice such that we could conclude that his right to a speedy trial was violated.

**Due Process**

¶33    *2) Was Maloney's right to due process violated as a result of excessive post-trial, pre-sentencing delays caused by the State?*

¶34    Having determined that the pre-trial delay was insufficient to support Maloney's claim that his speedy trial rights were violated, we turn to the question of whether his due process rights were violated by the delay in sentencing.[1]

¶35    In *Betterman* we explained that in order to determine whether a sentencing delay violates due process, we balance two factors. First, whether the delay was purposeful. *Betterman*, ¶ 32. Second, whether the delay prejudiced the defendant such that it was oppressive. *Betterman*, ¶ 32.

¶36    Here, because the facts in *Betterman* closely align with the facts in this case, we will rely on that opinion as a useful template for analysis. In *Betterman*, the defendant,

---

[1] We recognized in *Betterman*, ¶ 28, that reasonable timeliness of sentencing is a due process guarantee expressed by the Montana Legislature in several statutory provisions. See §§ 46-18-101(3)(a), 46-18-102(3)(a), and 46-18-115, MCA. Maloney, however, has failed to raise a statutory claim under code provisions mandating that a defendant be sentenced in a "timely" manner, without "unreasonable delay."

14

Betterman, pleaded guilty to a bail jumping charge on April 19, 2012. At the time he was serving a multi-year sentence for felony partner-family member assault. Betterman was finally sentenced 434 days later, on June 27, 2013. He moved the District Court to dismiss the case for lack of a speedy trial. The court denied the motion and Betterman appealed to this Court.

¶37 We first considered whether the delay was purposeful. We concluded that all but a very small number of days of delay must be attributed to the State, and that the delays were institutional in nature, rather than intentional or done in bad faith. *Betterman*, ¶ 33. We cautioned, however, that even though the delays were institutional, 434 days of sentencing delay was an unacceptable overreach on the part of the State. *Betterman*, ¶ 33.

¶38 We then considered whether Betterman was prejudiced by the delay. Betterman argued that he was prejudiced because a quicker sentencing would have provided him access to various correctional programs and services. *Betterman*, ¶ 35. We concluded, however, that such claims were overly speculative and did not have a sufficient causal link to Betterman's sentencing delay for us to conclude that the delay caused him prejudice. *Betterman*, ¶ 35. We stated that any prejudice resulting from the delayed sentencing was not "substantial and demonstrable." *Betterman*, ¶ 36. We also noted that the fact that Betterman was already serving time for a different crime and would have been in jail whether or not the sentencing had been faster weighed against his claim of prejudice. *Betterman*, ¶ 35.

¶39 Balancing the two factors, we determined that Betterman's delayed sentencing, though unacceptably long, did not prejudice Betterman sufficiently to constitute a due process violation.

¶40 Maloney's situation is similar to Betterman's. Maloney pleaded guilty on November 18, 2013 and was sentenced on July 17, 2014. Maloney's sentencing delay, therefore, was 241 days. Though not as long as Betterman's sentencing delay, 241 days strikes us as excessive. However, nothing in the record indicates that the delay was perpetuated intentionally or in bad faith. The delay appears to have been entirely institutional, and mostly comprised of waiting for completion of the PSI report. The record indicates that the State's attorneys provided information to the probation officer preparing the PSI promptly. Even attributing the entirety of the delay to the State, as in *Betterman,* the delay appears to have been of the unintentional, institutional variety.

¶41 As for prejudice, Maloney's claims of prejudice closely mirror Betterman's. Maloney claims that the sentencing delay prevented him from participating in the WATCh program and from receiving other mental health services. Maloney did, however, have access to treatment while awaiting sentencing. As in *Betterman*, the supposed prejudice in this case is overly speculative to be substantial and demonstrative.

¶42 Like Betterman, Maloney also argues that the sentencing delay increased his anxiety and concern to an extent that supports a finding of prejudice. We have stated, "the anxiety of an accused is not to be equated for constitutional purposes with anxiety suffered by one who is convicted, in jail, unquestionably going to serve a sentence, and

16

only waiting to learn how long that sentence will be." *Betterman*, ¶ 35. We find that to be the case especially when the accused was concurrently serving time for another offence, as was Maloney. Based on the facts before us we cannot conclude that Maloney's anxiety rose to the level of substantial and demonstrative prejudice.

¶43 Because Maloney was not substantially and demonstrably prejudiced by the sentencing delay, and because the sentencing delay was not purposeful, we conclude that Maloney's due process rights were not violated by the post-conviction, pre-sentence delay.

## CONCLUSION

¶44 The State did not violate Maloney's right to a speedy trial through excessive pre-trial delay. Furthermore, the State did not violate Maloney's due process rights through sentencing delay. Though the sentencing delay was perhaps excessive, Maloney did not suffer substantial and demonstrative prejudice as a result of the delay. Despite the fact that the District Court's analysis was rendered incorrect by our *Betterman* decision, the court's conclusion was correct.

¶45 Affirmed.

## NOTE

¶46 Justice Shea initially joined this Opinion. It came to our attention after originally publishing the Opinion on July 28, 2015, that Justice Shea's sister worked on this case as a Silver Bow County Attorney, and that Justice Shea should not have taken part in deciding this case. Pursuant to an order in this case dated July 30, 2015, we withdrew the

17

July 28, 2015 version of our Opinion. We reissue it now as a four Justice panel of the Court. The four Justices reconfirm the holdings of this Opinion.

/S/ MICHAEL E WHEAT

We Concur:

/S/ LAURIE McKINNON
/S/ PATRICIA COTTER
/S/ JIM RICE

Justice Jim Rice, concurring.

¶47    I concur in the Court's result and analysis. I write separately because I believe much of the analysis is unnecessary. In cases such as this—where the total delay is greater than 200 days but it is uncontested that the delay attributable to the State is less than 200 days—I would conclude it is unnecessary to carry out the *Ariegwe* analysis beyond the second factor.

¶48    In *Ariegwe*, we held that 200 days is a threshold for a speedy trial analysis and, if the delay is less than 200 days, no further analysis is necessary. *Ariegwe*, ¶ 107. If the delay is more than 200 days, we move on to the second factor and assess the reasons for the delay. All delays not demonstrably caused by the defendant are attributed to the State. *Ariegwe*, ¶ 108. In this case, Maloney conceded, "that, of the 220 days between arrest and pleading, 32 of those days are attributable to his motion to continue the trial date. Maloney contends that the remaining 188 days are attributable to the State, but

18

does not argue that the State was not diligent or acted in bad faith during that period." Opinion, ¶ 22. Once Maloney conceded that the State was responsible for less than 200 days of the delay, any analysis considering his response to the delay or any prejudice he may have suffered from the delay, as would otherwise be required by the third and fourth *Ariegwe* factors, becomes moot. I therefore would not require the analysis.

¶49 The 200-day threshold triggering a speedy trial analysis is nothing more than that—a threshold; it's not the Rubicon. Just because a defendant crosses the threshold in factor one does not preclude him from crossing back in factor two. In cases in which that occurs, I contend an analysis of the remaining *Ariegwe* factors is superfluous.

/S/ JIM RICE