JUSTICE RICE,
dissenting.
¶27 The complex and unwieldy Ariegwe test can lead to a parsing of the speedy trial inquiry into such minute pieces that it is easy to lose sight of the big picture. Indeed, as the U.S. Supreme Court has cautioned, the speedy trial factors that make up our Ariegwe test “have no talismanic qualities.” Barker, 407 U.S. at 533, 92 S. Ct. at 2193. The big picture we should see here is that the State was ready to try this felony case less than seven months after Mayes’ not guilty plea put this case on a track for trial, even with the delays associated with the Crime Lab, and, unlike in Velasquez, there was absolutely no impairment to the “most serious” interest to be protected by the speedy trial right—the ability of Mayes to present an effective defense. Ariegwe, ¶ 98; Barker, 407 U.S. at 532, 92 S. Ct. at 2193; Doggett, 505 U.S. at 654, 112 S. Ct. at 2692. For these and other reasons stated below, I would affirm.
¶28 The situation with the Crime Lab was likewise not the same as in Velasquez. There, the 309-day delay was occasioned when the prosecution failed to act “after learning of and ‘repeatedly’ confirming the nine-month delay” in processing the evidence, but doing nothing in response. Velasquez, ¶ 19. Here, after an initial unquantified delay in processing that arose when the Crime Lab advised that it could not accept Mayes’ syringe in its original condition, and that the contents would need to be extracted and re-packaged in a different container, the Crime Lab processed the evidence in just four months, providing a report on March 23, 2015—far less time than required in Velasquez. Although by then a trial date was not available for another two months (May 19), that delay was not caused by any lack of diligence by the State.
¶29 The Court assesses the State’s conduct as lying somewhere *423 between bad faith and lack of diligence, classifying it as not “merely a lack of diligence.” Opinion, ¶ 11. This underscores the vague subjectivity inherent in the Ariegwe analysis, dealing with, in its own words, “gradations of culpability.” Ariegwe, ¶ 71. Critically, however, the Court does not explain how this deficiency on the part of the State matters—how Mayes was ultimately prejudiced. Despite any lack of diligence on the part of the State, the Crime Lab produced the evidence in less time than expected, and Mayes’ interests did not suffer.
¶30 Unlike the Court, I would credit the District Court’s findings of fact on these issues. The District Court rejected Mayes’ arguments about bad faith and lack of diligence, finding Mayes “did not offer any evidence to show a lack of diligence on the part of the prosecution. The Defendant did not argue that the State failed to submit its alleged drug evidence to the crime laboratory in a timely manner.” Given this lack of evidence and argument in the District Court, and the nature and duration of the delay here as compared to Velasquez, I agree with the District Court in not weighing the delay in this case “heavily” against the State, as the Court does. Opinion, ¶ 11.
¶31 The Court also weighs against the State the impact upon Mayes’ ability to seek program placement, rejecting the District Court’s findings of facts and conclusions of law. Opinion, ¶¶ 16-19. However, the record is clear that, while screened for DOC programs before and after his arrest, Mayes’ initial inability to access programs resulted from his arrest, on August 7, and continued for that reason at least four months, through December 11, when his parole violation hearing (probable cause) was conducted. Even thereafter, Mayes was placed on a “parole hold” and subjected to further DOC detention until parole board hearings could be conducted, adding to the delay attributable to his arrest. Although Mayes may then have been able to post bail, he offered no proof that he could or would have done so, especially in light of the “parole hold.” As the District Court found, Mayes “was subject to continued custody regardless of the fact that the original trial date was vacated.” Further, the District Court found that Mayes’ program argument “was not supported by any evidence to identify particular programs at issue or to demonstrate the Defendant’s eligibility for such assistance.” The Court overturns the District Court’s findings on the basis of very thin and, in my view, inconclusive testimony. Opinion, ¶ 17. However, even if, in fact, Mayes sufficiently established his eligibility for programs, any delay in accessing them associated exclusively with the State’s delay in this criminal proceeding was minimal, and I agree with the District Court that it was not extensive enough to be considered oppressive. See State v. Maloney, 2015 MT *424 227, ¶ 32, 380 Mont. 244, 354 P.3d 611.
¶32 The Court agrees with the District Court that there was no evidence establishing aggravation of anxiety and concern. Opinion, ¶ 21. Further, it affirms the District Court’s findingthat Mayes’ ability to present an effective defense was not hindered in any way. Opinion, ¶ 24. The Court neglects to recognize the importance of this final factor, which, as cited above, has been generally acknowledged by the U.S. Supreme Court and this Court as the most important consideration of prejudice. See Barker, 407 U.S. at 532, 92 S. Ct. at 2193; Doggett, 505 U.S. at 654, 112 S. Ct. at 2692; Billman, ¶¶ 68-69. Thus, it should be accorded significant weight.
¶33 Making these adjustments in the weight to be given to theAriegwe factors, I would conclude that the record demonstrates that the factors do not weigh in Mayes’ favor. But beyond that, I believe it more important to recognize that the speedy trial factors are not to be “talismanic” in their effect, especially if they hinder seeing the big picture. The delays that occurred in this case are simply not out of the ordinary for the prosecution of a felony case in Montana. Mayes did not demonstrate significant prejudice. I would affirm.
JUSTICE BAKER joins in the dissenting Opinion of JUSTICE RICE.